[No. 13017. In Bank. — July 20, 1892.]

## C. J. DIEFENDORFF, APPELLANT, v. PETER HOPKINS, RESPONDENT.

ACTION FOR CONVERSION OF GOODS — JUDGMENT FOR DEFENDANT — FAILURE TO FIND VALUE OR DAMAGE. — A judgment for the defendant for costs, upon findings in his favor in an action for conversion of goods, is not rendered erroneous by the absence of an express finding on the issue of value and damage.

ID. — FINDINGS — ISSUES RENDERED IMMATERIAL. — The failure to find upon an issue which has become immaterial is not a prejudicial error. The parties to an action have no right to a finding upon every specific issue in a case merely because they may plead it as *res adjudicata* in some possible future controversy where it may become material.

ID. — JUSTIFICATION UNDER ATTACHMENT AGAINST PLAINTIFF'S VENDOR — STATUTE OF FRAUDS — CHANGE OF POSSESSION — PLEADING — SUFFICIENCY OF ANSWER — APPEAL — OBJECTION FOR FIRST TIME. — Where the defendant, in an action for the conversion of goods, justified under a writ of attachment against the vendor of the plaintiff under the statute of frauds for want of a sufficient change of possession, and the trial was conducted in the trial court without demurrer to the answer or objection

to evidence, upon the assumption of all parties that the plea was sufficient in form, it cannot be objected to for the first time upon appeal.

HUSBAND AND WIFE — SEPARATE PROPERTY OF WIFE — GIFT BY HUSBAND FROM COMMUNITY PROPERTY — COMMINGLING OF PROPERTY. — Property acquired after marriage may, as between husband and wife, become the separate property of the latter by gift; and community property may be allowed by the husband to be so mingled with the profits of the wife's separate estate as to indicate an intention that it should be her separate property.

ID. — BOARDING-HOUSES KEPT BY WIFE — TITLE TO FURNITURE. — Where a married woman has carried on boarding-houses with her separate funds mingled with a monthly allowance from her husband for the support of herself and children, and the whole course of conduct of both husband and wife for years, and all their declarations, show that she managed the boarding-houses, and bought and sold and exchanged furniture as she pleased, and in her own name, with her husband's knowledge and tacit consent, the husband repudiating any concern in the business, or any responsibility for its debts, and advising the wife to give it up, the circumstances are sufficient to overcome the presumption that the furniture so purchased is community property, and to establish the title of the wife to it as her separate property, which may be seized for her debts.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco.

The facts are stated in the opinion of the court.

*Thornton & Merzback* and *George A. Blanchard*, for Appellant.

*Freeman, Bates & Rankin*, for Respondent.

The COURT. — Upon further consideration of this case, we are satisfied with the conclusion reached in Department One on the former hearing, and with the opinion then filed, and for the reasons stated in that opinion, the judgment and order are affirmed.

The following is the opinion above referred to, rendered in Department One on the 10th of December, 1891: —

BEATTY, C. J. — The defendant, as sheriff of the city and county of San Francisco, levied a writ of attachment, issued in an action commenced by certain creditors of Mrs. M. A. Rix, against her and her husband, upon the furniture of a boarding and lodging house known as the "Colonnade." The plaintiff, claiming to be the owner

of the property attached, as vendee of the husband, demanded it of the defendant, and his demand being refused, commenced this action to recover damages for its conversion. The findings and judgment of the superior court were in favor of the defendant, and the plaintiff appeals from the judgment, and from an order denying his motion for a new trial. In support of his appeal from the judgment, the plaintiff makes two assignments of error: " 1. The judgment is erroneous on the face of the record, because there is no finding on the material issue of value and damage to the plaintiff; 2. The justification as pleaded is insufficient upon the face of the answer in this, that it is not alleged that either an affidavit or undertaking on attachment was filed in support of the writ under which the defendant justifies."

In considering these assignments, it is necessary to state the substance of the complaint and answer. It is alleged in the complaint that the defendant is sheriff; that on June 20, 1886, plaintiff was the owner and entitled to the possession of the furniture in the Colonnade; that on said day the defendant took said furniture and converted it to his own use; that the plaintiff thereafter, and while still the owner and entitled to the possession of said furniture, demanded of the defendant its redelivery and surrender to him; that said demand was refused; that said furniture is of the value of twenty thousand dollars; and that plaintiff has been damaged in that amount by said wrongful taking and conversion. The answer denies that plaintiff was ever the owner or entitled to the possession of all or any part of the furniture described in the complaint; denies that the defendant ever converted it, or any of it, to his own use; denies that surrender or redelivery has been demanded; denies that the furniture is worth any more than three thousand dollars; and denies that plaintiff has been damaged in any sum whatever. Following these denials, in what is designated in the findings of the superior court as subdivision 2 of the answer, are the following allegations: " Defendant, further answering, as a further defense to

said action, avers that on the first day of June, 1886, one Margaret A. Rix was, and for a long time prior thereto had been, and still is, the sole owner of all the property described in plaintiff's complaint; that on said first day of June, 1886, an action was duly commenced by one P. D. Barnhard against the said Margaret A. Rix and her husband, Alfred Rix, in the superior court of the city and county of San Francisco, state of California, to recover the sum of $5,451.90, alleged to be due and owing from defendant Margaret A. Rix to P. D. Barnhard, the plaintiff in said action, upon certain promissory notes executed by said Margaret A. Rix to one John Horstman and others, and assigned to said plaintiff; also for merchandise sold and delivered by John Horstman & Co. to said Margaret A. Rix upon open accounts, which said accounts were assigned to plaintiff; that on said first day of June, 1886, a summons in due form was issued in said last-named action, and was thereafter, on the —— day of June, 1886, served upon the defendant Alfred Rix, the husband of the defendant Margaret A Rix, and thereafter, on the —— day of June, 1886, served upon the defendant Margaret A. Rix, and said defendants have appeared to said action in said court; that on the first day of June, 1886, a writ of attachment in due form was issued in said last-named action after the issuance of summons therein, and was placed in the hands of the defendant as sheriff as aforesaid; that on or about date, and in pursuance of the commands of said writ, this defendant, as sheriff, levied said writ of attachment upon the property described in the plaintiff's complaint, and placed a keeper in charge of said property, and still holds the same under and by virtue of said writ of attachment, and in no other manner; that at the date of the levy of said writ of attachment this defendant was the duly elected, qualified, and acting sheriff of the city and county of San Francisco, and the property levied on, as this defendant is informed and believes, was and is the property of the defendant Margaret A. Rix, and subject to seizure by virtue of said

attachment; that this defendant has never removed any portion of the property described in plaintiff's complaint from the Colonnade House, but has placed a keeper in charge of said property in said house, and allowed the said Magaret A. Rix to use said property, subject to the control of said keeper; that this defendant now holds said property as sheriff to satisfy any judgment which may be recovered in said action of Barnhard against Rix."

The following are the findings of the superior court:—

"1. That the plaintiff was not, on the twentieth day of June, 1886, nor at any time prior to the commencement of this action, the owner or entitled to the possession of all or any of the household furniture described in this complaint. The defendant, on or about said twentieth day of June, 1886, took said furniture in the manner hereinafter stated; and the plaintiff thereafter made a demand upon the defendant for the surrender and delivery of said furniture; and the defendant then and at all times refused to surrender and deliver the same to plaintiff; 2. That all the allegations of subdivision 2 of the defendant's answer are true; that the defendant seized and holds the property described in plaintiff's complaint under the circumstances and for the purposes stated in said subdivision 2. As conclusions of law, I find the defendant entitled to judgment for his costs of suit, and to be dismissed hence without delay.

"Signed December 29, 1887.

"JAMES G. MAGUIRE, Judge."

1. The judgment is not erroneous for want of an express finding on the issue of value and damage. There could be no finding of damage, because the effect of the findings made is, that there was no damage, and the value of the goods is of no consequence. Whether it was three thousand or twenty thousand dollars could make no possible difference in the result. Under the facts found, no additional finding as to value could have prevented a judgment for the defendant for costs; and it has been frequently held in this court that the failure to pass upon an issue which has thus become imma-

terial is not error, or at least, that it is not a prejudicial error. (*McCourtney* v. *Fortune,* 57 Cal. 619; *Dyer* v. *Brogan,* 70 Cal. 139; *Malone* v. *County of Del Norte,* 77 Cal. 217; *Robinson* v. *Railroad Co.,* 65 Cal. 263; *Brison* v. *Brison,* 90 Cal. 323.) Many other decisions to the same effect might be cited. Notwithstanding these decisions, it is contended by appellant, or seems to be, that an omission to find upon all the issues in the case is prejudicial error, because it deprives him of the advantages which it was the purpose of the statute (Code Civ. Proc. secs. 632, 633) to secure, viz., a final adjudication upon each separate issue, to serve as a basis for a final judgment by this court on the appeal. But we do not see how this court could ever in any case render a final judgment for the appellant, however full and specific the findings might be, if a finding on one or more of the issues compelled a judgment for the respondent regardless of the others. As to the claim that the parties have a right to a finding upon every specific issue in a case, in order that they may plead it as *res adjudicata* in some possible future controversy where it may become material, although it is not so with regard to the matter being litigated, we do not think it was any part of the purpose of the statute to secure such a dubious advantage.

2. No question was raised in the superior court, either by demurrer to the answer or by objection to evidence, as to the sufficiency in form and substance of the defendant's plea of justification under the attachment; and conceding, without deciding, that if such an objection had been made it would have been necessary for the defendant to amend his answer, we are bound to hold, in accordance with our settled rule, that where, as in this case, the trial has been conducted in the superior court upon the assumption of all parties that a plea is sufficient, it cannot be objected to for the first time when the case is here on appeal. The judgment, therefore, must be affirmed.

The principal question in the case, however, arises

upon the appeal from the order denying the plaintiff's motion for a new trial.   He contends, in support of this branch of the appeal, that the first finding of the court is contrary to the evidence.   In other words, he contends that from all the evidence in the case it clearly appears that the furniture in controversy belonged to Alfred Rix, the husband of Mrs. Margaret A. Rix, in June, 1884, at which date it was transferred to the plaintiff by a bill of sale executed by Mrs. Rix, in the name of her husband as his attorney in fact, and that it has ever since remained the property of the plaintiff.   In addition to the findings of the superior court above quoted, there is contained in the record an opinion of the judge in which the grounds of his decision are set forth more specifically and more at large, and in which he discusses several matters not involved in the findings, as, for instance, the effect of the conduct of Alfred Rix as an estoppel, the effect of an existing lease of the furniture upon plaintiff's right of possession at the date of the seizure, and of the commencement of the action, etc.   A great deal of space is devoted in the briefs of counsel to a discussion of these questions, and of points of practice and pleading to which they give rise.   We think, however, that they are wholly immaterial.   The question, and the only question, to be decided is this: Does the evidence support the findings that the plaintiff was never the owner of the furniture, and that Mrs. Margaret A. Rix, at the date of the levy of the attachment in the suit of her creditors, was the sole owner ?   If it does, the order must be affirmed; and if it does not, the order must be reversed, irrespective of the reasons contained in the opinion of the judge.

The evidence shows that Alfred and Margaret A. Rix were married in 1858, and took up their residence in a house belonging to the husband on Pine Street, near Powell.   At the date of the marriage the wife had no property, but shortly thereafter her husband gave her some lots at the Mission, which she subsequently sold. With the proceeds she purchased a vacant lot adjoining

the family residence, upon which her husband erected a large house, containing about thirty rooms, which she used as a boarding and lodging house. Subsequently, she rented and disposed of several other boarding or lodging houses in succession before taking the Colonnade. She always, however, kept up the Pine Street house, leaving it in the personal charge of her niece when she was compelled to be at the other places. How she managed to furnish these various houses, whether by the aid of her husband or upon her own credit, does not distinctly appear; but it is very clearly shown that her husband had nothing to do with the business, either actually or ostensibly. It was always spoken of as her business, and both by his words and his whole course of conduct, Mr. Rix distinctly repudiated any concern in it, or any responsibility for its debts. In 1870 he was called to New York on business, and during the ensuing four years was there a large portion of the time. From 1874 to 1883 he was there all the time, with the exception of a few flying visits to California. During all of this time Mrs. Rix was carrying on her business in San Francisco, a business with which her husband would have nothing to do, and which he was constantly advising her to give up. He made her an allowance of four hundred dollars a month, apparently for the support of herself and children, but seems never to have directed any particular application of it. She apparently mingled the receipts of her business and her husband's allowance, and expended both in supporting herself and children and in keeping up the business. The circumstances and the acts and declarations of both parties indicate that this was known by and at least tacitly consented to by her husband. The result was, that in 1883, her husband still being in New York, she had the Colonnade, a large house of one hundred rooms, fully furnished, where she was keeping a boarding and lodging house, and the Pine Street house, where her niece was in charge. But she had incurred debts, and being pressed for money, tried to obtain it from the plaintiff.

She offered to sell him the furniture of the Colonnade, presumably upon some such terms as were subsequently made in the name of her husband, but the plaintiff would not purchase from her.   Acting under advice of counsel, he required a bill of sale from her husband.   She accordingly obtained from her husband some sort of an authorization to sell, the terms of which, the writing having been lost, are not very clearly proven.   Whatever they were, however, the power of attorney was executed by Mr. Rix, as a matter of form, as he expressed it; or rather, as the evidence indicates, for the mere purpose of satisfying the plaintiff.   It is perfectly evident that in spite of the power of attorney and the form of the transaction, Mrs. Rix all the time claimed the furniture and the right to dispose of it, and that Mr. Rix never did claim it, or any part of its proceeds.   After obtaining written authority from her husband, Mrs. Rix executed and delivered a bill of sale of the Colonnade furniture in her husband's name to the plaintiff, receiving therefor the sum of three thousand dollars.   At the same time the plaintiff gave her a lease of the furniture for two years, which was subsequently renewed for another term of two years, at a rent of forty dollars per month, stipulating that she might purchase the furniture at any time within the term for four thousand dollars. There was no delivery or change of possession of the furniture.   The plaintiff lodged in the Colonnade for a few months, as others did, but it is not seriously claimed that this circumstance was sufficient to work a change of possession.   There was not the slightest outward or visible change in the condition of the property, nor did any occur up to the date of the levy of the attachment. Such being the facts disclosed by the evidence, we think they sustain the finding of the court that the furniture of the Colonnade was the separate property of Mrs. Margaret A. Rix.

To begin with, she owned the Pine Street house and lot, where she carried on a business which was hers exclusively, and in which her husband refused to have any

part. The proceeds of such business were, therefore, her separate estate, as being the profits of her separate property. (Civ. Code, sec. 162.) It is true that they may have been, to some extent, the profits of her labor and personal attention, but so must, in some degree, be the rents, issues, and profits of any separate estate of either spouse, and the wife must have the same right to manage her separate estate, so as to turn it to profit, that the husband has to manage his separate estate. The proceeds of the business, therefore, belonged to her. What these amounted to and how they were expended does not appear, and neither is it shown how the Pine Street house was furnished. But the whole course of conduct of both husband and wife for years, and all their declarations, go to show that she managed the boarding-houses, bought and sold and exchanged furniture just as she pleased, and in her own name, with her husband's full knowledge, and without any objection on his part, except his objection to her engaging in a business at all, which he considered unprofitable and injurious to her health.

As to the furniture in question, these circumstances, we think, are more than sufficient to overcome the presumption which ordinarily obtains, that any property purchased by either spouse after marriage is community property. Even if it appeared that some of the furniture originally put in the Pine Street house was bought and paid for by Mr. Rix, the subsequent conduct and declarations of the parties would warrant the inference that it was a gift to his wife. And if, with his knowledge and express or tacit consent, she used some portion of her monthly allowance to pay bills incurred in her business, that also would, as between themselves at least, be regarded and treated as a gift. To what extent creditors of the husband could call in question such transfers to the wife, or how far they could resort to the proceeds of a business, carried on as this was, in disregard of the provisions of the statute relating to sole traders, is a question which does not arise in this case; the only

question here being as to how property acquired after marriage may, as between husband and wife, become the separate property of the latter.   There is no doubt that it may become so by gift, and we think that so far as any property originally belonging to this community was mingled with the profits of Mrs. Rix's separate estate, the evidence fully warrants the conclusion that it was so mingled with the husband's knowledge and consent, and with the intention that it should be hers to use, control, and alienate at her pleasure.   Indeed, neither the husband nor wife makes any claim to the contrary in any part of their evidence.   All this the plaintiff knew, or might easily have ascertained (and there were abundant facts within his knowledge to put him upon inquiry), before purchasing the property; but he neglected to avail himself of the knowledge which he had or might have had.   The result is, that he-has no title to the furniture by the transfer from Alfred Rix.   As against Mrs. Rix, his title would probably be good by estoppel; but as against her attaching creditors, it is wholly invalid for want of delivery and change of possession.

The judgment and order of the superior court are affirmed.

<div style="text-align:right">

95   353.
98   103

95   353
d126 642

95   353
128   291
f129 227

95   353
133   523

95   353
142   189