[S. F. No. 5107. In Bank.—November 21, 1910.]

In the Matter of the Estate of WILLIAM H. PEPPER, Deceased. PHEBE PEPPER, Appellant.

HUSBAND AND WIFE—PROPERTY PRESUMPTIVELY COMMUNITY.—Bank deposits made, and promissory notes and other personal property acquired, after marriage, are presumptively community property.

ID.—EVIDENCE TO SHOW SEPARATE CHARACTER OF PROPERTY—DEGREE OF PROOF—APPEAL.—While the separate character of property acquired by either of the spouses after marriage is to be established only by clear and convincing evidence, such a degree of proof as, excluding possibility of error, produces absolute certainty, is not required. Only that degree of proof which produces conviction in an unprejudiced mind is required, and evidence which ordinarily produces such conviction is satisfactory. Whether the evidence offered is of such a character, is a question for the trial court, and its determination, upon conflicting evidence, will not be reviewed on appeal.

ID.—LAND CLAIMED BEFORE MARRIAGE—SUBSEQUENT PERFECTION OF TITLE.—The mere fact that title to land, which a man had been occupying under a claim of ownership for many years before his marriage, was not perfected by conveyance from the source of paramount title until a later date, would not alter the character of the land itself as separate property.

ID.—PROCEEDS OF SALE OF SEPARATE PROPERTY USED AS NURSERY—PROFITS.—The proceeds of the sale of property owned by a husband at the time of his marriage, and used by him in carrying on the business of a nursery, and the profits and earnings made by him after marriage in conducting such business, are his separate property.

ID.—ISSUES AND PROFITS OF NURSERY CONDUCTED ON SEPARATE LAND.—
The proceeds of a nursery business, which consisted of the raising
of young trees and plants, and the sale thereof, conducted by the
husband after marriage on land that was his separate property, are
"issues" or "profits" of such land, within the meaning of section 163
of the Civil Code, and are also separate property. The fact that
such enterprise may require the application of personal skill, labor,
and attention in a greater degree than other agricultural occupa-
tions, is immaterial.

ID.—MONEY OBTAINED BY HUSBAND FROM WIFE AND USED IN BUSINESS
—LOAN—FINDINGS.—Evidence that soon after his marriage, the
husband obtained from his wife the sum of two thousand dollars
which he used in the nursery business, and had never returned, is
not inconsistent with a finding that his entire estate was separate
property. The transaction might have been a gift or a loan to the
husband. If the latter, the lender's recourse was to present a cred-
itor's claim against the estate.

ID.—DECLARATIONS BY HUSBAND IN PRESENCE OF WIFE—EVIDENCE.—
Evidence of declarations made by the husband, in the presence of
his wife, to the effect that all of his property had been accumulated
by him before his marriage, and her conduct in the face of his asser-
tions, are admissible against her, in a proceeding on distribution of
his estate, to determine its character. as separate or community
property.

ID.—REMOTE DECLARATIONS BY HUSBAND AS TO PROPERTY OWNED.—In
such a proceeding, error, if any, in refusing .to admit evidence of a
statement made by the husband sixteen years before his marriage,
to the effect that he then had very little property, is immaterial, on
account of the remoteness of the statement.

ID.—CHARACTER OF PROPERTY QUESTION OF LAW—HUSBAND'S OPINION
INADMISSIBLE.—Whether any particular property is community or
separate is a question of law, and evidence of an opinion expressed
by the husband as to its character is inadmissible.

'APPEAL from a decree of the Superior Court of Sonoma
County distributing the estate of a deceased person. Emmet
Seawell, Judge.

The facts are stated in the opinion of the court.

J. R. Leppo, for Appellant.

Thos. P. Boyd, W. F. Cowan, and F. A. Meyer, for Re-
spondents.

SLOSS, J.—William H. Pepper died testate, leaving an estate which was appraised at one hundred and thirteen thousand dollars and over. By his will he gave to his widow, Phebe Pepper, twenty-six thousand dollars, and a house and lot valued at four thousand dollars.

In due course the executors petitioned for distribution of the estate in their hands in accordance with the terms of the will. The widow appeared and answered, claiming that all of the estate was community property, and that she was entitled to one half thereof, in addition to the legacy and devise given her by the will. The trial court, after hearing evidence on this issue, decided that the entire estate was the separate property of the decedent, and decreed distribution in accordance with the terms of the will. The widow appeals from the decree of distribution.

The point most strongly urged by the appellant is that the evidence fails to support the finding of the separate character of the estate.

William H. Pepper came to Sonoma County in 1858 or 1859. He settled upon a tract of land in Green Valley, containing one hundred and sixty acres. He took up his residence upon this land and commenced at once to cultivate it, putting in a nursery and an orchard, and devoting part of the land to pasturage and to the growing of grain. Later, and prior to his marriage to the appellant, he acquired additional land adjoining his original holding, until his ranch or farm comprised about two hundred and ninety-one acres. He was married to the appellant in 1874. At that time he had put upon his land various improvements, and was conducting thereon an active nursery business. His course of procedure was to grow plants, principally fruit trees, either from seed or from stock imported from France or the eastern states, until they had attained the age of one or two years, and then to sell the plants so grown. From the time of his marriage until his retirement in 1900, he lived upon the land mentioned, and devoted his entire time and energy to the conduct of the nursery and the farming operations which were being carried on there. During all this time the appellant lived with him, and performed her household and other duties as a faithful wife should. The area of land applied to nursery purposes was, from time to time, increased by Pepper. There is the

direct testimony of several witnesses, including Mrs. Pepper herself, to the effect that during all the years of his marriage Pepper was engaged in no business other than that which he conducted on the ranch. In January, 1900, he sold the land, with the nursery and the personal property thereon, to one Robinson for twenty thousand dollars, and took up his home in Petaluma. In March, 1906, he died. His estate consisted of the house and lot devised to his widow, of cash in bank to the amount of $51,121.92, of interest-bearing notes to the amount of fifty-seven thousand four hundred dollars, and of bank stock and furniture appraised at one thousand three hundred and fifty dollars. The bank deposits were made, and the notes and other personal property acquired, so far as appears, after his marriage. The presumption is, therefore, that all of these items were community property (*In re Boody,* 113 Cal. 682, [45 Pac. 858]; *Fennel* v. *Drinkhouse,* 131 Cal. 447, [82 Am. St. Rep. 361, 63 Pac. 734].) Was the trial court justified in finding that this presumption was overcome? There are to be found, in many of the decisions of this court, expressions to the effect that the separate character of property acquired by either of the spouses after marriage is to be established only by "clear and convincing evidence," "clear and decisive proof," or the like. (*Meyer* v. *Kinzer,* 12 Cal. 252, 253, [73 Am. Dec. 538]; *Mott* v. *Smith,* 16 Cal. 557; *Adams* v. *Knowlton,* 22 Cal. 288; *Morgan* v. *Lones,* 78 Cal. 62, [20 Pac. 248]; *In re Boody,* 113 Cal. 682, [45 Pac. 858]; *Davis* v. *Green,* 122 Cal. 364, [55 Pac. 9]; *Roe* v. *H. S. & L. S.,* 134 Cal. 405, [66 Pac. 569].) But, as is said in *Freese* v. *Hib. S. & L. Soc.,* 139 Cal. 392, [73 Pac. 172], "it was never intended by this court to lay down a rule requiring demonstration in such matters,—that is, such a degree of proof as, excluding possibility of error, produces absolute certainty (Code Civ. Proc., sec. 1826). Such proof is never required. Generally, moral certainty only is required, or that degree of proof which produces conviction in an unprejudiced mind, and evidence which ordinarily produces such conviction is satisfactory." (Code Civ. Proc., secs. 1826, 1835.) And, in speaking of a similar question in *Couts* v. *Winston,* 153 Cal. 686, [96 Pac. 357], we said that "whether or not the evidence offered . . . is clear and convincing is a question for the trial court. . . . In such cases, as in others, the determination of that court in favor of either party upon con-

flicting or contradictory evidence is not open to review in this court."

While the respondents were unable to trace with exactness the transmutations of Pepper's acquisitions into the items of property which he left at his death, we think it can hardly be questioned that the record authorized an inference that his entire estate consisted of the proceeds of the sale of property owned by him at the time of his marriage, together with such profits and earnings as he had made in conducting his ranch. It was shown that he held the ranch before his marriage, and had been occupying it under a claim of ownership for many years. (The mere fact that his title to a part of the land was not perfected by conveyance from the source of paramount title until a later date would not alter the character of the land itself as separate estate. (*Lake* v. *Lake*, 52 Cal. 428; *Estate of Higgins*, 65 Cal. 407, [4 Pac. 389] ; *In re Lamb*, 95 Cal. 397, [30 Pac. 568] ; *Estate of Boody*, 119 Cal. 402, [51 Pac. 634].) It was also shown that he had been engaged in no business other than that of conducting the ranch. In this testimony the court had a sufficient basis for the conclusion that whatever Pepper had at his death, over and above the property owned by him when he married, had been acquired in the business or occupation carried on by him on said ranch.

There can be little question, on the evidence, that the principal part of such business consisted of the conduct of his nursery. The appellant argues with great earnestness that the profits and earnings of such nursery business after marriage, must, as matter of law, be held to be community property. We think this position cannot be sustained. Section 163 of the Civil Code provides that "all property owned by the husband before marriage, and that acquired afterwards by gift, bequest, devise, or descent, with the rents, issues, and profits thereof, is his separate property." The question here is whether the proceeds of the nursery conducted on the land can be considered as "issues" or "profits" of the land. Earnings, acquired by the exercise of the industry or skill of either husband or wife, are to be credited to the community. On the other hand, the products of land, separately owned by either spouse, and cultivated by either or both, become the separate property of the one owning the land. The appellant does not dispute the proposition that, if Pepper had, year

after year, sown his land to grain, the resulting crops would have formed a part of his separate estate. But it is argued that, in the case of the nursery, the principal element in the success of the venture was the industry, skill, and attention of Pepper, and that the use of the land was merely incidental to what was, in effect, a commercial enterprise. We are unable to see that this argument furnishes a sufficient ground of distinction. In any agricultural enterprise, the labor and skill of man are essential to success. An orchard or a grain field must be cultivated and cared for. The resultant product is in part due to the processes of nature operating upon the land, and in part to the intelligent application of manual labor to the soil. It is, in the nature of things, impossible to apportion the crop so as to determine what share of it has come from the soil and what share from the exertions of man. The product must be treated as a whole, and, if it is the growth of land separately owned, it is the separate property of the owner of the land. (See *Diefendorff* v. *Hopkins,* 95 Cal. 343, 352, [28 Pac. 265, 30 Pac. 549].) The case of the nursery differs from that of the orchard or the grain field, if at all, only in the fact that the enterprise may require the application of personal skill, labor, and attention in a greater degree. But the occupation is, none the less, one conducted upon land, and the product sold is the growth of that land. The seed or the cutting is planted in the soil, it is there nurtured and grown until it reaches a certain stage of development, and is then taken up and sold. If the crop of grain sown and harvested by the owner of the land constitutes "issues and profits" of the land, we are unable to see why the same may not be said of young trees and plants raised on the land until they are ready for transplanting. There may be cases in which the business is virtually one of purchase and sale of plants, the ground being used merely to preserve the plants until sales can be effected. In such cases it might well be said that the enterprise is so predominantly commercial that the profits are not to be treated as issuing from the land. But on the facts before us, the court below, while it might have regarded the case as coming within this class, was not bound to do so.

The decisions of this court are not in conflict with these views. It would not be profitable to review the cases cited by counsel, since none of them deal with facts like those before us.

There was evidence that, soon after his marriage, Pepper had obtained from his wife the sum of two thousand dollars, which he had used in the nursery business. The money was never returned to Mrs. Pepper. This circumstance is not inconsistent with the finding that the entire estate was separate property of Pepper. Under the evidence the court might have concluded that Mrs. Pepper made a gift of the two thousand dollars to her husband. If, however, it was a loan the lender's recourse was to present a creditor's claim to the executors.

The appellant complains of errors alleged to have been committed by the court below. The respondents were permitted to introduce evidence of declarations made by Pepper to the effect that all of his property had been accumulated by him before his marriage. Standing by themselves, these self-serving statements were, of course, not admissible in favor of the declarant or his successors in interest. There was, however, testimony to the effect that Pepper had made the declarations in the presence of his wife. Her conduct in the face of his assertions was competent as against her.

On the other hand, the court did not permit the appellant to prove declarations of Pepper himself. In so far as his statements were against his interest, they were admissible against the parties claiming under his will. (Code Civ. Proc., sec. 1850.) The first of Pepper's declarations sought to be proved was one to the effect that, upon his arrival in Sonoma County in 1858 he had very little property. This statement referred to a period antedating his marriage by sixteen years. Besides, it had not been shown by the respondents that any considerable part of the estate left by Pepper could be traced back to his possession in the year 1858. The evidence in question had so remote a bearing upon the ultimate issue that its exclusion, if error, must be regarded as of no consequence.

The court permitted one of appellant's witnesses to testify that Pepper had stated, some sixteen years before his death, that he had accumulated forty thousand dollars since his marriage, and that this was or that he considered it community property. The court struck out the declaration that the amount stated was community property. We think there was no error in this ruling. Whether the property was community or separate was a question of law, depending on the manner

CLVIII Cal.—40

and time of its acquisition. The opinion of Pepper on this legal question was entitled to no weight. The statement of fact made by him was allowed to stand, and this was all the appellant was entitled to.

The judgment is affirmed.

Angellotti, J., Shaw, J., and Lorigan, J., concurred.

Rehearing denied.