[Civ. No. 3603. Second Appellate District, Division One.—May 26, 1921.]

EUPHRASIA VAN CAMP, Respondent, v. FRANK VAN CAMP, Appellant.

[Civ. No. 3604. Second Appellate District, Division One.—May 26, 1921.]

EUPHRASIA VAN CAMP, Appellant, v. FRANK VAN CAMP, Respondent.

[1] DIVORCE—CONFLICT OF EVIDENCE—APPEAL.—Where in an action for divorce the evidence upon most of the issues is conflicting, the appellate court in considering the question as to whether the evidence is sufficient to sustain the findings is not permitted to weigh the testimony and determine as to where the preponderance lies.

[2] ID.—EXTREME CRUELTY—IMPROPER CONDUCT OF HUSBAND WITH CORESPONDENT.—Acts tending to show improper relations of a husband with a corespondent may cause a wife sufficient mental suffering to constitute extreme cruelty.

[3] ID.—EXTREME CRUELTY—NATURE OF ACTS AND CONDUCT.—Acts and conduct of either spouse, unjustifiable under a reasonable rule of marital behavior, which in any case may cause great physical suffering or mental torture, are sufficient to sustain a charge of extreme cruelty, although conduct which might amount to cruelty in

case of a refined and sensitive spouse might not amount to such in the case of a person of no refinement and of a coarse nature.

[4] COMMUNITY PROPERTY—PRESUMPTION.—All property in the possession of either husband or wife is deemed to be the community estate of the parties, notwithstanding the declaration of section 163 of the Civil Code that all property owned by the husband before marriage with the rents, issues, and profits thereof is his separate property, but such presumption is disputable and may be overcome by evidence to the contrary.

[5] ID.—MANAGEMENT OF CORPORATION—SALARY AND EXPENSES—INCOME FROM STOCK OWNED BEFORE MARRIAGE—SEPARATE PROPERTY OF HUSBAND.—Where a husband at the time of his marriage was a man of large means, which included cash, notes, real estate, and corporate stock, and where during his marriage he devoted his exclusive attention to the management of a corporation for which he received a large salary and an additional amount for expenses incurred in the conduct of the business, his income during his married life outside of such salary and expenses was the rents, issues, and profits of his separate property owned by him before his marriage, and therefore his separate property, notwithstanding some of the income was from stock owned by him in the corporation and the result of his skillful management thereof.

[6] ID.—FAMILY SUPPORT—PAYMENT FROM COMMUNITY FUNDS—PRESUMPTION.—In the absence of any evidence showing a different practice, the rule is that the community earnings of husband and wife are chargeable with the family support, and any amount expended for such purpose by either spouse is presumed to have been paid out of the community estate.

APPEALS from a judgment of the Superior Court of Los Angeles County. Charles S. Crail, Judge. Affirmed and reversed.

The facts are stated in the opinion of the court.

Kemp & Clewett for Appellant in Civil No. 3603 and for Respondent in Civil No. 3604.

Fredericks & Hanna for Respondent in Civil No. 3603 and for Appellant in Civil No. 3604.

THE COURT.—This is an action for divorce. Defendant Van Camp has appealed from a decree dissolving the mar-

4. Whether profits accruing during marriage in connection with property belonging to separate estate of either spouse are community property, note, 31 L. R. A. (N. S.) 1092.

ital bonds, and also from that portion of the judgment awarding to the plaintiff the sum of $60,000, and determining that certain real and personal property is the separate property of the wife. The judgment in favor of the wife for $60,000 was made upon the finding of the court that the community property was of the value of $90,000 and that the plaintiff was entitled to two-thirds thereof. There is a separate appeal taken by the wife from the judgment in so far as it fixes the value of the community estate, it being the contention of the plaintiff that the latter was of a value greatly in excess of $90,000. As the defendant's appeal involves contentions opposite to that of the plaintiff respecting the property judgment, we will consider the appeals together when that feature of the decree is given attention.

In her complaint the plaintiff first charged (on her information and belief) that the husband had committed adultery with a person who was named as corespondent, on two specific occasions, and at other times the dates of which were not stated. A course of improper conduct as occurring between the defendant and the corespondent was described in a separate cause of action and made the ground for a charge of extreme cruelty. As a part of this alleged cause of action it was also set forth that upon one occasion defendant had struck the plaintiff and called her "a damn fool." By reason of the acts and conduct of the defendant, as so described in the second alleged cause of action, plaintiff asserted that she had been caused "great and grievous mental suffering and anguish," and had been caused to "brood and worry to the point of distraction," and "that such mental suffering, anguish, brooding, and worry have seriously impaired the plaintiff's health and vitality." The court in its findings determined that the acts of adultery had not been committed but added to the findings touching these matters that "the plaintiff had probable and reasonable cause to believe" that defendant did commit the acts charged. It is urged that the findings are not sustained by the evidence, either upon the divorce issues or as to the value of property belonging to the marital community. These contentions will be considered in the order named. In the year 1914 defendant Van Camp came from Indianapolis to Los Angeles. His family then consisted of a

grown son. He was a man of large affairs and had been the directing head of an extensive packing establishment in Indianapolis bearing his name. He brought to California property of great value, consisting largely of cash and stock securities. After his arrival in Los Angeles he organized the Van Camp Sea Food Company. The company was capitalized with 2,000 shares of stock at a par value of $100 each. He became the president and general manager of the corporation and received up to January, 1918, a salary of $1,000 per month. This salary was increased on January 1, 1918, to $1,500 per month and so remained at all times subsequent thereto. The packing plant was located at the seaport town of San Pedro. More particular consideration will be given to the details of defendant's capital, his investments, earnings, and income when we later take up the points raised as against the finding of the court as to the value of the community holdings. We will here pass that subject with the observation that the packing company organized by Van Camp was a successful venture and produced large returns. In March of 1916 defendant Van Camp married the plaintiff, who was or had been an employee in the postoffice at San Pedro. Plaintiff was then twenty-one years of age; the defendant was about fifty-four years old. Immediately upon the marriage, defendant purchased a home in the city of Los Angeles, expending therefor about the sum of $15,000, and the deed to the place was made to the wife. Not long thereafter defendant delivered to the wife a certificate of deposit representing a cash credit of $10,000 and a deed to a lot at San Pedro. Defendant further provided each month for the plaintiff a cash allowance for household expenses which, at the time of the commencement of this proceeding, was $450; he also provided plaintiff with an automobile. The evidence goes to show that defendant was in the main liberal in the direction of gratifying all the wishes of his wife as to things desired for her pleasure and comfort. The mother of plaintiff resided at San Pedro and received partial support, at least, from the exchequer of Van Camp. [1] Considering the question as to whether the evidence is sufficient to sustain the findings of the court as to the facts upon which the decree of divorce is based, we are not permitted to weigh testimony and determine as to where the prepon-

derance lies, for in the presence of a conflict such as appears here upon most of the issues, the determination of the trial judge as to facts must be deemed conclusive.    The evidence then must be viewed from the standpoint that will give to it the strongest weight in sustaining the findings of the court.    The record of the evidence is of large volume and in support of the plaintiff's case it shows that several years after the marriage of the parties, particularly in the year 1919, defendant Van Camp was often seen in the company of the corespondent, who was employed in the office of the Van Camp Company; that the two would be together in the automobile of defendant and that the frequency of their association in that manner was brought to the attention of plaintiff's family and others, and also reported to the plaintiff; that upon one of the earlier occasions plaintiff remonstrated with her husband and he admitted the wrongfulness of his conduct and promised not to repeat it; notwithstanding that promise he continued to conduct himself in the same manner with the corespondent; that he neglected the plaintiff in the home, became irritable and upon one occasion, when she took a paper from his hand and requested him to talk to her, struck her and called her "a damn fool"; that upon another occasion he drove in his automobile with the corespondent away from the traveled highway and into a thickly wooded grove, where he remained for a considerable time alone with the corespondent; that plaintiff at this time, in company with her mother and another person, pursued defendant into the grove and upbraided him with accusations of improper conduct, to which accusations he made the response that he had nothing to say; that plaintiff, prior to the alleged misconduct of the defendant had been well and not affected by illness of any kind, but that the knowledge · of the alleged misdoings of the defendant so preyed upon her mind that she became nervous and ill; that she was unable to sleep and cried a great deal.    There was sufficient corroboration of the particulars furnished to satisfy the requirement of the code.    Defendant admitted the occurrence in the grove, when he was accosted by the wife. He claimed that he had merely stopped to eat fruit with the corespondent, but expressly declined to make any explanation as to why he had selected a secluded place away from the main thoroughfare.    **[2]**    Appellant makes the point that

all of the acts found by the court to have been committed by him which tended to show improper relations with the corespondent were acts showing, if anything, only an adulterous intent, and that they were not available to the plaintiff for the purpose of establishing any cause of action except that of adultery. This contention rests upon the early cases of *Haskell* v. *Haskell*, 54 Cal. 262, and *Waldron* v. *Waldron*, 85 Cal. 251, [9 L. R. A. 487, 24 Pac. 649, 858]. These decisions do give decided aid to the contention, but are not now the law. (See *Barnes* v. *Barnes*, 95 Cal. 171, [16 L. R. A. 660, 30 Pac. 298]; *Wolff* v. *Wolff*, 102 Cal. 433, [36 Pac. 767, 1037].) **[3]** Acts and conduct of either spouse, unjustifiable under a reasonable rule of marital behavior, which in any case may cause great physical suffering or mental torture, are sufficient to sustain a charge of extreme cruelty. We state that as a general proposition, but it is subject always to the qualification that conduct which may in one case cause such suffering may not, in another, have the same effect. Thus the use of vulgar and profane epithets may, in the case of a highly cultured, refined, and sensitive woman, produce an effect of great mental anguish; while the same conduct may not, in the case of a woman of no refinement and of coarse nature, have any such effect at all. Hence, in the first case the charge of extreme cruelty might be sustained by the evidence; in the second case it would not be. "Whether in any given case there has been inflicted this 'grievous mental suffering' is a pure question of fact, to be deduced from all the circumstances of each particular case, keeping always in view the intelligence, apparent refinement, and delicacy of sentiment of the complaining party; and no arbitrary rule of law as to what particular probative facts shall exist in order to justify a finding of the ultimate facts of its existence can be given." (*Barnes* v. *Barnes, supra.*) In the case before us, where a girl of twenty-one is shown to have married a man of fifty-four, we would be inclined to be very skeptical as to the truth of any claim that, by reason of the alleged acts of defendant toward the named corespondent, plaintiff's mental suffering was in anywise attributable to the fear alone that the bond of affection between her and her husband might be ruptured. The story, as it is told in the printed pages

of the record, suggests strongly a marriage of convenience so far as the plaintiff is concerned. However, there are other factors to be considered, and under one phase of the case it cannot be said that the court was without warrant in finding that the plaintiff had suffered in the manner described in the complaint and findings. She presented a state of facts showing that the actions of defendant with and toward the alleged corespondent were noted by her family and others, and created comment and gossip, and that she was humiliated thereby and caused to suffer greatly in her mind. Whether or not her feeling toward her husband was one of lively affection, she was satisfied in her marital relations, her home was established and her future comfort apparently assured. The conduct of the husband, as the evidence shows and the findings determine it to have been, might well be said to have rendered intolerable a continuance of the marital partnership and to have caused the plaintiff to be humiliated and consequently disturbed in mind. That question was one peculiarly within the province of the trial judge to determine. The demeanor, appearance, and mental make-up of the complainant were all factors which would be proper to be considered, none of which can find much expression in the narrative of the testimony as it appears in cold type. And so we think, as we have already stated, that the case in its facts is put without the province of this court to draw conclusions on the question of cruelty different from those which have been assigned by the trial judge. In the foregoing we have made no attempt to set forth with any degree of detail the substance of the testimony which was presented at the trial. A much lengthier statement would be required if we were to make that effort, and, furthermore, it is only necessary that enough be stated to show that there was some substantial evidence presented by the plaintiff in support of the charge of cruelty as made in her complaint. We attach no significance to the phrase used by the trial judge in qualifying the finding negativing the adultery charges, which stated that while those charges were untrue plaintiff had reasonable cause to believe that they were true. This language was probably incorporated in the findings for the purpose only of showing that the adultery charges made by the plaintiff were not made with the idea of willfully

imposing upon the court. The qualifying words might be eliminated from the findings altogether without affecting the conclusions in any respect. No errors of a substantial nature were committed by the lower court in receiving or rejecting evidence.

The community property allotment: It appears that during the existence of the marital relation defendant transferred and conveyed to plaintiff certain real estate of the value of $33,000, a certificate of deposit of $10,000, and a Liberty bond of the denomination of $5,000, making a total of $48,000, which property, together with certain personal property and household furnishings, the court found was the sole and separate estate of plaintiff. While there is a conflict in the testimony touching the question, the evidence was sufficient to show that all of said property so found to be the separate estate of plaintiff became such by gifts from defendant to plaintiff. As before stated, the court found that there was community property of the plaintiff and defendant Frank Van Camp of the value of $90,000, and by the judgment awarded plaintiff two-thirds of said sum. Defendant, as appellant, attacks this finding upon the ground that the evidence is insufficient to support the same, and plaintiff, on her appeal, insists that the evidence shows that the value of the community property of the parties was largely in excess of the amount found by the court. [4] Section 163 of the Civil Code provides that "all property owned by the husband before marriage . . . with the rents, issues and profits thereof, is his separate property." Notwithstanding this declaration, the rule is that all property in the possession of either husband or wife is deemed to be community estate of the parties. (*Freese v. Hibernia etc. Society,* 139 Cal. 392, [73 Pac. 172]; *Estate of Pepper,* 158 Cal. 619, [31 L. R. A. (N. S.) 1092, 112 Pac. 62].) Since, however, the presumption attending such possession is a disputable one, either spouse claiming to the contrary may controvert the presumption and offer evidence to overcome the same. [5] From the evidence offered touching the question, it appears without dispute that at the time of his marriage to plaintiff, defendant was a man of large means, which included cash, notes, real estate, and corporate stock; that at the time he was president and manager of a corporation known as the Van Camp Sea

Food Company, to the management of the affairs of which he devoted his exclusive attention, and for the services so rendered to said corporation received therefrom, up to January, 1918, the sum of $1,000 per month, which, commencing with January, 1918, was increased to $1,500 per month; that in addition to such salary he received from said company during the period of the marital relation an additional sum of $12,203 for the purpose of meeting expenses incurred by him in connection with the business; that during the period in question he was engaged in no other business whatsoever, and, excepting the money so received from said corporation, he had no income other than that derived as rents, issues, and profits from the property owned by him at the time of his marriage. The total amount received by him from said corporation on account of salary and expense money during the existence of the marital relation was the sum of $69,203. It therefore follows that all other income, large or small and regardless of the amount thereof, must necessarily have been derived from the property which he owned at the time of his marriage. [6] In the absence of any evidence showing a different practice, and there is none, the rule is that the community earnings of husband and wife are chargeable with the family support. (*Estate of Cudworth,* 133 Cal. 462, [65 Pac. 1041].) Hence any amounts of money expended for such purpose by either spouse during the existence of the marital relation are presumed to have been paid out of the community estate. It appears that during such period defendant expended for the support of his family, and for income tax and premiums on policies of life insurance wherein his estate was made the beneficiary, the sum of $84,576. The premiums on his life insurance so paid were not a charge upon the community estate. Neither was the entire sum of $18,380 paid by defendant on account of income tax, a charge thereon. Just what proportion of said income tax should be charged to defendant's personal earnings is not made to appear; but conceding for the purpose of the argument that the community estate be deemed free from such burden and the entire sum so paid be imposed upon defendant's other income, and deducting both the life insurance premiums and income tax, the aggregate of which is $23,946, from the total of $84,576 so expended,

leaves a balance of $60,630 as the amount actually expended for the community benefit and chargeable to his community earnings of $69,203. This leaves to the credit of the community estate the amount of $8,573, which sum, however, should be further reduced to the extent of the amount chargeable against it on account of its proportion of the income tax so paid by defendant. It thus appears that the evidence is insufficient to show the existence of a community estate of plaintiff and defendant of the value of $90,000, and since his earnings from personal service rendered did not exceed the sum of $69,203, the balance of his income, whatever it may have been, was necessarily derived from the rents, issues, and profits of the property which he owned at the time of his marriage. In our opinion, the evidence is as conclusive of that fact as though defendant had, upon proof of the property owned by him at the time of his marriage, shown the exact income derived therefrom. Hence, conceding, as argued by counsel for Mrs. Van Camp, that defendant at the time of the trial admitted the possession of cash, bonds, and other property acquired during the marriage, the value of which was in excess of the large income admittedly received during said time, nevertheless it cannot be said to have constituted community estate of the parties, but, for the reason that, as heretofore stated, his personal earnings having been conclusively fixed, any excess in value of property so acquired must be accredited to the income received from rents, issues, and profits of the separate estate, rather than to the income of the joint efforts of the community. And further, conceding that Van Camp, according to figures tabulated by counsel for the wife, accumulated (in addition to the amount received for his services from the corporation during the marriage and, as shown, exhausted in the payment of household expenses) property other than that owned at the time of the marriage, of the value of $241,000, such sum is largely offset by $141,000 received in dividends from the Van Camp Sea Food Company alone, while $48,000 was given to his wife, and a large sum on profits derived from sales of stock in said company, making a total approximating, if not equal to, the amount so claimed by plaintiff to have been received by him; all of which appears to have been the result of investments from his separate estate.

Hence, assuming that defendant did not fully disclose the full amount of his separate income, which was in excess of that stated by him, and that he had acquired other property with such undisclosed income during the marriage, such property, since it was not acquired with his earnings, cannot be deemed community estate.

It is insisted by counsel for Mrs. Van Camp that the Van Camp Sea Food Company, if not a myth, was a mere agency through which defendant conducted his business, and since its enormous income was due to the skill and ability with which defendant conducted the business, the community estate should be accredited with all the profits derived therefrom in excess of seven per cent interest upon the capital which defendant had invested therein. In support of this contention she cites *Pereira* v. *Pereira,* 156 Cal. 1, [134 Am. St. Rep. 107, 23 L. R. A. (N. S.) 880, 103 Pac. 488], wherein it appeared that the husband at the time of the marriage had a separate estate of $15,500 invested in a business conducted by him. The trial court held that all moneys and profits derived by defendant after marriage through his personal management of such business belonged to the community estate. On an appeal by the husband, the supreme court, in discussing the question, said: "This capital was undoubtedly his separate estate. The fund remained in the business after marriage and was used by him in carrying it on. The separate property should have been credited with some amount as profit on this capital. It was not a losing business but a very profitable one. It is true that it is very clearly shown that the principal part of the large income was due to the personal character, energy, ability, and capacity of the husband. This share of the earnings was, of course, community property. But without capital he could not have carried on the business. In the absence of circumstances showing a different result, it is to be presumed that some of the profits were justly due to the capital invested. There is nothing to show that all of it was due to defendant's efforts alone. The probable contribution of the capital to the income should have been determined from all the circumstances of the case, and as the business was profitable it would amount at least to the usual interest on a long investment well secured." In our opinion, the circumstances attending the Pereira case are not

applicable to the facts involved herein. While it may be true that the success of the corporation of which defendant was president and manager was to a large extent due to his capacity and ability, nevertheless without the investment of his and other capital in the corporation he could not have conducted the business, and while he devoted his energies and personal efforts to making it a success, he was by the corporation paid what the evidence shows was an adequate salary, and for which another than himself with equal capacity could have been secured. Had such course been pursued and defendant contented himself merely with the receipt of dividends from the business, the character of the dividends as separate property could not have been questioned. Instead, however, of doing this, he entered upon the duties as manager of the corporation, gave his exclusive time and efforts thereto, for which he received first $12,000 and later $18,000 per year. The case presented is not unlike that involved in *Estate of Pepper*, 158 Cal. 619, [31 L. R. A. (N. S.) 1092, 112 Pac. 62], wherein it was held that the profits and earnings made by the husband after marriage in conducting the business of a nursery upon property owned by him at the time of his marriage was his separate property, notwithstanding the success of the venture required industry, skill, and attention. "It is impossible," said the court, "to apportion the crop so as to determine what share of it has come from the soil and what share from the exertions of man. The product must be treated as a whole, and, if it is the growth of land separately owned, it is the separate property of the owner of the land," citing *Diefendorff* v. *Hopkins*, 95 Cal. 343, [28 Pac. 265, 30 Pac. 549]. So, in the instant case, it is impossible to say what part of the enormous dividends paid by the Van Camp Sea Food Company should be apportioned to the skill and management thereof and what part should be apportioned to the investment of the capital and the favorable conditions under which the business was conducted. Furthermore, there is no merit in the contention that the corporation was a myth, or that it was a mere instrumentality through which defendant conducted his business. It was organized in June, 1914, long before defendant's marriage, with a capital of $200,000, consisting of 2,000 shares of the par value of $100 each, of which stock Van Camp at the time

acquired 1,300 shares, Paul Eachus 500 shares, and F. H. Ford 200 shares, besides two shares distribnted to others who, with the persons named, constituted the five directors of the corporation. Subsequently, for the sum of $20,000, defendant acquired the 200 shares of stock issued to Ford, and in March, 1915, for $35,000, he bought the stock issued to Paul Eachus. Later he sold 83 shares of his stock to Wilbur Wood, and, prior to his marriage, sold to his son 300 shares thereof for the sum of $45,000. At no time did he own more than 1,499 shares of the stock. The corporation was duly organized and constituted an entity separate and distinct from that of defendant. Even were it otherwise and, as claimed by plaintiff, a mere instrumentality for conducting defendant's business, nevertheless, in view of the fact that he was adequately paid by the corporation for his services, such compensation, under the holding in the case of *Estate of Pepper, supra*, must be deemed the extent of his personal earnings, and the balance of the profits derived from the business accredited to the use of the capital invested therein, in the same manner as though he had not been employed by the corporation.

The judgment as entered on the divorce issues is affirmed.

The judgment as to the amount and value of the community property and as to the disposition thereof between the parties is reversed and the cause is remanded for a new trial upon that issue alone; appellant Frank Van Camp to have his costs of appeal.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 25, 1921.

All the Justices concurred, except Wilbur, J., who was absent.