BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION, AS EXECUTOR OF THE LAST WILL AND TESTAMENT AND OF THE ESTATE OF WILLIAM JOHN MCGOWAN, DECEASED, AND AS TRUSTEE UNDER TRUST AGREEMENT EXECUTED BY WILLIAM JOHN MCGOWAN IN HIS LIFETIME, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 100967. Promulgated February 19, 1941.

*R. H. Hudson, Esq.*, for the petitioner.
*Arthur L. Murray, Esq.*, for the respondent.

696

698

OPINION.

STERNHAGEN: The Commissioner arrived at the deficiency by expanding the decedent's gross estate to include the entire value at the time of his death of the personalty, the home place, and the Trafton tract. The petitioner assails this and points to the community property agreement of December 29, 1931, to support the contention that all of the property, real and personal, was the subject of this agreement and that only one-half thereof was properly in the gross estate.

As to the personal property, there is no doubt that the community agreement of 1931 covered it and that only one-half the value thereof is properly within the gross estate. The community property agreement was valid and effective under California law, *In re Sill's Estate*, 121 Cal. App. 202; 9 Pac. (2d) 243; *Yoakam v. Kingery*, 126 Cal. 30; 58 Pac. 324; covered property previously as well as subsequently acquired by either spouse, *In re Henderson's Estate*, 128 Cal. App. 397; 17 Pac. (2d) 786; *Roberts Land & Improvement Co. v. Dallas*, 124 Cal. App. 86; 11 Pac. (2d) 1103; *In re Wahlefeld's Estate*, 105 Cal. App. 770; 288 Pac. 870; and is binding upon the Federal Government in the determination of the gross estate, *United States v. Goodyear*, 99 Fed. (2d) 523; *Bank of America National Trust & Savings Association v. Rogan*, 33 Fed. Supp. 183. As shown by the findings, this personal property consisted of the five items aggregating $26,300.28.

The home place was acquired by the decedent prior to his marriage, and it is stipulated by the parties that it was his separate property when it was transferred in trust in 1929. The trust was revocable and hence the home place is, by section 302 (d) of the Revenue Act of 1926, as amended by section 805 of the Revenue Act of 1936 (see sec. 811 (d), I. R. C.), within the gross estate to the extent of its entire value. *Helvering v. City Bank Farmers Trust Co.*, 296 U. S. 85. This must be held, irrespective of the later community property agreement of 1931. Having made the transfer by a revocable trust, the decedent could not avoid the inclusion of the entire value thereof in his gross estate by subsequently executing a community property agreement. This can be readily seen by supposing an outright gift of the home place in contemplation of death. In such case the property would have been included within the gross estate in its entirety, notwithstanding any

subsequent agreement converting his separate property into community property.

By the declaration of 1929, the Trafton tract was likewise transferred in trust, and by the same reasoning the decedent's interest must be included in his gross estate, notwithstanding the community agreement of 1931. The extent of such interest is to be determined. It depends upon the proportions of the investment in the tract which decedent, his wife, and the marital community contributed. *In re Fellow's Estate*, 106 Cal. App. 681; 289 Pac. 887. These proportions can not be determined with precision. As shown by the findings, the property was acquired in 1920 for a price of $45,000, of which the $5,000 paid in cash was contributed by the wife from her separate bequest. The remaining $40,000 was covered by a note given by both and secured by a mortgage on the combined home place and Trafton tract. Soon thereafter a payment of $2,500 was made on the note with money contributed by the wife from a separate bequest. Thereafter the remainder of the note was paid in several payments with money attributable to income from farming operations and rents of the combined properties. With some doubt, we think that the only part of the investment that can be clearly said to support a separate interest of the wife is the original $5,000 which she paid in the purchase of the Trafton tract. This was one-ninth of the entire purchase price of $45,000; the other eight-ninths was community property until the transfer in trust. The property transferred in trust by the decedent is one-half of this community estate, or four-ninths of the value of the Trafton tract. The other four-ninths is to be regarded as the remaining community property attributable to the wife and one-ninth is to be regarded as the wife's separate property. This apportionment, it must be admitted, is mathematically less than satisfactory, but it is as precise as the evidence permits. The rents and income which were used to discharge the note can not be identified as to their source between the home place and the Trafton tract; and since the home place is stipulated to have been the husband's separate property and by California law the income from separate property is itself separate property of the owner thereof, section 163, Deering's Civil Code of California; *In re Dargie's Estate*, 179 Cal. 418; 177 Pac. 165; *Van Camp* v. *Van Camp*, 53 Cal. App. 17; 199 Pac. 885, it would be a hopeless task to apportion among the husband, the wife, and the community the payments that were made of the purchase price before the 1931 agreement. Although the $2,500 payment by the wife in 1921 is specific, it is, since an approximation is necessary, fair to leave this item out of the account as a proper offset to the other uncertainties in the calculation.

To summarize, therefore, the decedent's gross estate is held to include (1) one-half the value of the five items of personal property which are held to be covered by the community agreement of 1931; (2) the entire value of the home place at the date of death; and (3) four-ninths of the value of the Trafton tract at the date of death.

*Decision will be entered under Rule 50.*