GUY C. EARL, JR., PETITIONER, *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT.

Docket No. 582.   Promulgated February 13, 1945.

*Dana Latham, Esq.*, for the petitioner.
*Byron M. Coon, Esq.*, and *Harold D. Thomas, Esq.*, for the re-
spondent.

OPINION.

HILL, *Judge*: In order to decide the single issue presented it is necessary to trace the ownership of the investments which produced the income reported by petitioner and his wife for the years 1940 and 1941. It is solely a question of fact and the legal principles involved are few. The sale of Western stock to Columbia in 1936 produced these investments, and the first question to decide is whether the 760 shares of Western's stock acquired in 1931 were separate or community property and the second is what part, if any, of the proceeds of the sale of the 390 shares acquired before marriage is community property.

Respondent has determined that the 760 shares were petitioner's separate property and that the investments made with the proceeds of the sale to Columbia are petitioner's alone and the income therefrom is taxable to him. Respondent is asking us to hold that the 760 shares acquired by Express in 1927 in exchange for its radio business were in reality the separate property of petitioner and acquired by him prior to his marriage. His argument is ingenious and clever. However, the conclusion is inescapable that respondent is really demanding that we ignore the corporate entity of Express and declare that Express held this stock in trust for petitioner. We see no sound reason for so holding. There is no question here of fraud or tax evasion. The "doctrine of corporate entity fills a useful purpose in business life." *Moline Properties, Inc.* v. *Commissioner*, 319 U. S. 436. In the case before us it should not be disregarded, and we so hold. It is unnecessary to review the lengthy testimony, much of which we have set out in our findings. We have found that these shares were acquired by petitioner in 1931 for $10, paid with community funds, and that at the time $10 was a fair price for the stock. Western had lost money since it commenced operations, it was a continuous financial drain on Express. The Hearst interests were hostile to the radio business, along with the other newspaper publishers of the country. They were glad to be rid of Western stock and the Annandale Country Club membership. At the time the deal for the transfer of KNX was worked out on January 30, petitioner was so eager to unload the Express on Hearst that there were no restrictions on its sale. It was only after the deal was made and petitioner had personally received Hearst's approval that he began to negotiate for the stock. At all times prior to sale to petitioner in 1931 title to the stock was in Express. The proceeds of the sale attributable to these shares are community property, and investments made and the income therefrom belong to the community.

The 390 shares owned by petitioner prior to 1931 were his separate property. We have found that some of the increase in value of such stock during the period 1931–1936, prior to the sale to Columbia, was due to petitioner's excellent management and his services. Had he been adequately paid for such services, the total proceeds of the sale to Columbia would have been the separate property of petitioner. *Van Camp* v. *Van Camp*, 199 Pac. 885; *Gump* v. *Commissioner*, 124 Fed. (2d) 54. Cf. *Shea* v. *Commissioner*, 81 Fed. (2d) 937. However, it is conceded that the compensation which petitioner received for such services was grossly inadequate. We have found that the reasonable value thereof for the year 1931 and subsequently through March 1936 aggregated $170,000 and that he was paid only $5,500. It follows that the unpaid balance of the amount of such reasonable compensation, or

$164,500, constituted a contribution by the marital community of petitioner and his wife to the increase in value of the entire 1,500 shares of Western's outstanding capital stock realized as gain in the sale to Columbia. That portion of such gain realized on the sale of the 390 shares attributable to the community contribution of $164,500 was community property and mathematically is 390/1500 of $164,500. The remainder of the realized gain on the sale of the 390 shares was petitioner's separate property.

Since the income with which we are concerned was produced from property purchased with the proceeds of the sale of the stock in question, the proportion of separate and community interest in such income is the same as that obtaining with respect to the proceeds of sale of such stock as hereinabove determined.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

MURDOCK, *J.*, dissenting: The findings of fact in this case show that the radio corporation stock was practically worthless, or at most worth only a nominal amount, in 1931, so that the separate property which the petitioner had in the 390 shares of stock of that corporation was worth little or nothing at that time. The petitioner devoted all of his time and energies to the operation of the radio corporation from 1931 to 1936. It is found as a fact that the increase in value of the stock from a nominal amount in 1931 to almost $800 a share in 1936 was due primarily to the petitioner's services and his management of the business. He was a member of the community during that period. Thus, this increase in value was due primarily to the industry, skill, and activities of the community, and under the community property law of California proceeds of the sale of the 76 percent of the stock of the corporation owned by Earl and his wife would all be community property except that Earl should have returned to him as separate property the value of his 390 shares at the time the community took over management of the property in 1931, plus a reasonable return on that amount, including any natural increase in the value of those shares not due to the activities of the community. This, I think, would be a different amount of separate property than is determined under the majority opinion in this case, in which undue emphasis is placed upon the source of the few dollars representing the cost and value of the shares in 1931.

DISNEY and HARRON, *JJ.*, agree with this dissent.