Pearson, C. J.
 

 It was properly conceded by Mr. Shepherd, on the argument, that the doctrine of “ the lien of a vendor for the purchase money ” does not obtain in this State. (See the cases collected in Battle’s Digest.) He rested the complainant’s right to relief on the relation of principal and surety, and assumed, in the first place, that a surety is not bound to wait until he has been forced to pay Hie debt, but is allowed to file a bill “
 
 qma timet
 
 ” and obtain.
 
 *88
 
 a decree, that the principal pay the debt tor his exoneration. This proposition is true, and the only difficulty is that it does not fit the case; for one of the allegations of the bill is that the estate of the principal is hopelessly insolvent: so a decree of this kind would be useless, and is not prayed for. The scope of the bill is to have a house and lot, belonging to the principal, subjected to the payment of the debt. Mr. Shepherd puts this equity on the ground that the debt, for which the complainant is bound os surety, was created for the purchase of this very house and lot, and as the principal, is insolvent, the complainant, as surety, has an equity to be indemnified out of it, in preference to any other creditor, on the broad principle that a surety, who pays, or is about to be forced to pay, for the property, ought in conscience to have it, or at least to be indemnified by it; and he insists that the defendant, Mrs. Miller, who is the executrix of the principal, and the defendant, Mr. Cowan, who purchased from her with notice, are subject to this equity. The latter branch of this proposition is true. Neither Mrs. Miller nor Mr. Cowan can be in a better condition than the principal debtor, “in whose shoes they stand.” So the only point is: Gan the first branch of the proposition be sustained, either upon principle or by authority ?
 

 That a surety, who is forced to pay for property, ought in conscience to be indemnified out of it, is a proposition which, at first view, will strike every one as in accordance with natural justice. Yet, upon examination, it will be found that it cannot be practically applied, without interfering toe much with the ordinary dealings between man and man, and without restricting too much the exercise of the-rights of property. For this reason, although Courts of Equity have at all times been studious to protect sureties, yet they have never adopted this broad principle, and have confined their interference to the limited bounds, which I will have .occasion to state below.
 

 
 *89
 
 Take our case, by way of illustration. In 1853 Thomas CL Miller bought the house and lot of Mrs. Guión, and she accepted from him a bond, with two sureties, for the pur- , ®hase money, to be paid at the expiration of ten years, interest to be paid annually, and thereupon executed to him a deed for the property, by force and effect whereof he be-same, to all intents and purposes, the owner, both at law and in equity. After that time Mrs. Guión had no more right to look to this property for the payment of the debt than to any other property of his, and no more concern with it than any other creditor; and he had as full ownership in it as in any other property that belonged to him. What an intolerable fetter would it be on the rights of property to adopt the doctrine that he could not sell this house and lot, and that it could not be sold for his debts as long as a bond, which, by the acts of the parties, had become a
 
 naked personal
 
 abligation, or any part of it, remained unpaid ?
 

 Let us now see how far the courts 'have felt at liberty to go in favor of sureties. It is true, as Mr. Shepherd contended, that, when a surety pays the debt, he is held in equity to entitled to the benefit of any security which the creditor bolds against the principal; in other words, to be subrogated to the rights of the creditor against the principal. So here, if Mrs. Guión had retained the title as security, or if she had taken a mortgage, the surety would have been entitled to the benefit of the security. For this position
 
 Green
 
 v.
 
 Crocket, Polk
 
 v.
 
 Gallant,
 
 and the other cases cited for the complainant, are authorities; but they all proceed on the principle that the legal title being in the creditor, as a se®xsrity, the surety may call for it, as an indemnity. The learned counsel was forced to concede that these cases do not apply. But he relied upon
 
 Freeman
 
 v.
 
 Mebane,
 
 2 Jones’ Eq., 44, as an authority in point; for he says that there the legal title was in the principal, and not in the creditor, and
 
 *90
 
 was subjected in the hands of a purchaser to indemnify the surety.
 

 It is true, that in that case the legal title was in the principal, but an examination of the case will show that it was not an extension, but a new application, of the doctrine of substitution, laid down in
 
 Green
 
 v.
 
 Crocket
 
 and the other cases, and is subject to the very same limitations. Freeman was the surety of one Sutton, on a bond to make title to one Nichols. Afterwards Mebane bought the legal estate which Sutton held at sheriffs sale. Freeman thereupon filed a bill and obtained a decree to subject the land ly> his indemnity, on the ground that Nichols, the
 
 creditor
 
 in the bond, had the equitable estate, and could force Mebane to convey the legal estate to him; and by the doctrine of substitution, Freeman, the surety, had a right to call on the creditor and have the benefit of all the rights and secureties which he held against the principal. There the surety took the place of the creditor, and was allowed to set up his
 
 equitable
 
 title. In
 
 Green
 
 v. Crocket, and the other cases', the surety took the place of the creditor, and asserted his
 
 legal
 
 title. But in all of the cases the
 
 creditor
 
 had either a legal or equitable title; whereas, unfortunately for the complainant in our case, the creditor has neither a legal nor equitable title, and there is nothing for a Court of Equity to act upon, by way of substitution. It is the misfortune of the surety that the creditor relied on the bond alone, and ho himself neglected to take any counter security.
 

 Per Ccriam.
 

 Demurrer allowed, and bill dismissed with costs, except as to defendants Guión and wife.