Mason v. Somers.

---

## James H. Mason

*v.*

## Alfred Somers et al.

[Filed February 19th, 1900.]

1. An endorser who lends his name to give credit to a note, does not thereby become a creditor of the maker in the sense required by the statute of frauds, so as to raise a presumption that the maker's subsequent voluntary conveyance of his property is, as to such endorser, fraudulent.

2. That the maker may not pay the note when due, that the first endorser may be duly notified and may not pay, and that the second endorser may be notified and may be compelled to pay, are all circumstances which indicate a possibility that a future debt may arise in favor of the second endorser, but until the second endorser does pay the note the maker is not actually indebted to him.

3. The maker of a note obtained it to be endorsed by referring to his owner-ship of lands as evidence of his ability to pay it. Afterwards and before the maturity of the note, he conveyed to his only child all the lands on which he obtained the credit, and substantially all he owned, without any bargain as to value, and after he had opportunity to anticipate the failure of his business which subsequently occurred. For this conveyance but a nominal cash con-sideration was given, the rest of the consideration being the satisfaction of a debt alleged to be owed by the father to his son for services rendered during the time the son was a member of his father's family, while a much larger admitted debt owed by the son to the father was left wholly unapplied and unsatisfied.—*Held*, sufficient to prove that the deed was made and accepted with intent to defraud the creditors of the maker of the note within the mean-ing of the statute of frauds.

On bill, answer and proofs.

The complainant files this bill as a judgment creditor to set aside a deed made by the defendant Alfred Somers to his son, Milton Le Roy Somers, alleged by the defendant to be without consideration, and for discovery touching the real estate belong-ing to the defendant, &c.

The property is situated in Atlantic county. The deed was made July 23d, 1896, and recorded in Atlantic county clerk's office on the same day. The complainant alleges that the deed was for a pretended consideration, made to secure to the defend-ant the property conveyed to his own use and benefit, and to protect it from the claim of the complainant and to prevent him from collecting his debt; that before the making of the deed the defendant was indebted to the complainant in $825, and that afterwards, July 19th, 1897, the complainant began suit which resulted in judgment on September 7th, 1897, for the sum of $882.87 damages and costs. The execution was issued to the sheriff of the county of Atlantic and returned *nulla bona*.

The defendant Alfred Somers admits his seizin and convey-ance of the land in question, denies that on July 23d, 1896, he

was indebted to the complainant, but admits that on July 19th, 1897, the complainant began an action against him on which he recovered judgment as named in the bill. He admits the conveyance by deed dated July 23d, 1896, to the defendant Milton Le Roy Somers, but he denies that at that time any sum or debt was due to the complainant, and denies that the conveyance was made to defraud the complainant, or to secure the property conveyed to the use of the defendant, or to protect it from the claim of the complainant or to prevent him from collecting his debt. He alleges that the property was conveyed to Milton Le Roy Somers for a full *bona fide* consideration, and that since the conveyance the said Milton Le Roy Somers has occupied, possessed and enjoyed the premises and the rents; denies that the conveyance was in any way fraudulent or void, or made to hinder and delay and defraud the creditors of the defendant.

The defendant Milton Le Roy Somers also answers and admits the conveyance, but alleges it to have been in good faith, without any fraudulent intent or purpose to protect the property of the defendant Alfred Somers from his creditors, or to hinder the complainant in collecting his debt; alleges that he paid full *bona fide* consideration for the conveyance, and has, since he received it, always possessed and enjoyed the rents and profits of the premises.

The proofs show that in the latter part of June, 1896, the defendant Alfred Somers was the owner of three lots of land in Atlantic county, described in the bill of complaint, being the property which the complainant seeks to charge with the payment of his claim.

Alfred Somers and William Somers were desirous of buying out a "shoot-the-chutes" business, and to accomplish this they desired to raise $2,600. They applied to the complainant to aid them to raise the money by lending them his name as endorser. On June 30th, 1896, Alfred Somers, who was to raise $1,300, made his note for that sum to William Somers, who endorsed it. The complainant next endorsed it and William Somers again endorsed it, and the note was then obtained to be discounted. Alfred says that William got the proceeds of the dis-

counting of this note. Another note for a like sum was made by William Somers to the order of Alfred and endorsed by him and one Johnson and afterwards by Alfred. This was discounted and Alfred received the proceeds and used them to purchase stock in the "shoot-the-chutes" concern, of which he became president.

The business did not turn out to be profitable, though Alfred says he did not discover it until late in the season. On July 23d, 1896, Alfred Somers made a deed conveying all the lots named in the bill (being all the lands he had except an equity of $25, in a lot at Oceanville) to his only child, Milton Le Roy Somers, a young man who had just come of age. The stated consideration of this deed was $2,000. It was recorded the same day it was made.

Young Somers states that he did not receive the deed until after it was recorded. He did not know why the consideration was named as $2,000. As he stated it, the consideration was, in fact, $45 in cash, which he paid to his father, and $900 which he said his father owed him for labor done in great part before he came of age and while he lived in his father's family. He also stated that at the time the deed was made he owed his father $1,700 for moneys expended by his father for his special college education as a doctor, upon an express agreement made between them; that he had a book in which the memoranda of these transactions were entered, but no such book was produced. Milton also stated that he knew about the middle of July, 1896 (the deed was made July 23d, 1896), that his father was going into the "shoot-the-chutes" business and that he had not enough money for it. It was, he says, understood between him and his father that the deed was made to secure the debt which his father owed him, and his debt to his father was to stand.

*Mr. Clarence L. Cole*, for the complainant.

*Mr. Robert H. Ingersoll* and *Mr. Samuel E. Perry*, for the defendants.

GREY, V. C.

The complainant contends that the proofs in this case show that the defendant Alfred Somers made a fraudulent conveyance of his real estate to his son, for the purpose of avoiding the payment of his debts, and insists that the deed for that reason is void under the statute of frauds.

The counsel for the defendant Alfred Somers contends that in order to sustain the complainant's claim he must have been in the position of a creditor of Alfred, at the time the latter made the conveyance to his son ; that in the transaction as to the note, Alfred was merely an accommodation maker for the benefit of William Somers, who got all the money ; that for this reason the complainant, who was second endorser on the note, was not, when the deed was made, a creditor of Alfred Somers. He cites *Severs* v. *Dodson, 8 Dick. Ch. Rep. 634,* as authority for the proposition stated.

That case declares simply a rule of evidence that a conveyance will not be presumed to be void solely because it is voluntary, except in favor of debts existing when it was made ; and further that an accommodation endorser of a note does not become a debtor to the holder, in the sense prescribed by the statute of frauds, so as to raise the presumption of fraud, until the note is dishonored.

The principle decided is applicable in the present case, but not for the reason alleged by the defendant. It is not because Alfred Somers was an accommodation maker, nor because William Somers, the payee, got the proceeds of the discounting of the note, that the complainant was not a creditor of Alfred Somers. For if the complainant had himself discounted, or purchased and paid for Alfred's note, he would have been his creditor, whether Alfred got the avails or not.

The complainant in the case now before me, at the inception of the note, had no interest in it ; he gave nothing for it ; he did not discount it or purchase it ; all he did was to lend his name as second endorser to aid in procuring it to be discounted. No recovery could have been had upon it by the complainant if it had remained in his hands when he endorsed it, and had come

to be due and had been dishonored. He was not, because of this note, at that time, in any sense a creditor of Alfred Somers. The note had no efficacy whatever until the bank gave it life by discounting it. Then the parties for the first time became answerable according to the order of their liability, but it was to the bank which furnished the money, and not to the complainant, who at this stage of the transaction was simply an accommodation endorser of the note held by the bank, with only a possibility that he might ever become a creditor of Alfred Somers. This *status* of the complainant toward Alfred's note continued from June 30th, 1896, when the note was made, to September 30th, 1896, when it was renewed, and during all the subsequent renewals until he took up the paper. Meanwhile, the alleged fraudulent conveyance was made on July 23d, 1896, by Alfred Somers to his son.

The principle propounded in *Severs* v. *Dodson, ubi supra,* precludes the complainant from being considered in the class of creditors as against whom a voluntary conveyance by their debtor will be presumed to be void. It declares that such a presumption will not be raised with respect to a mere responsibility because it may, on the happening of some contingency, come to be an indebtedness, as in case of a warranty of title, or a suretyship on a bond. In this case the complainant, when the note was made and up to the time that he paid it, had but a possibility that he might become a creditor of Alfred Somers, in respect to the note, by paying it as second endorser to some one who was the holder. This, when done, did make the complainant an actual creditor of Alfred Somers, who made the note, and of William Somers, the prior endorser. But this situation did not arise until the note had been last renewed on December 30th, 1896, and was paid by the complainant about March 30th, 1897, more than eight months after the deed had been made by Alfred to his son.

The complainant not being a creditor of Alfred Somers on July 23d, 1896, the time of the making of the challenged conveyance, it follows that it will not be presumed that the convey-

ance in question, even if voluntary, was fraudulent as to the complainant, so as to be void under the statute of frauds.

The result is that the complainant cannot maintain a right to relief by simply showing that there was a conveyance which was voluntary, or for a grossly inadequate consideration, and then invoke the presumption that it was fraudulent as to him as a creditor. He must go beyond this and prove that when the defendant made the questioned conveyance it was with a fraudulent purpose to defeat or hinder his creditors. If he is able to show such a condition of affairs, the same case (*Severs* v. *Dodson; 8 Dick. Ch. Rep. 637*) declares that " a contingent liability as that of an accommodation creditor will lay a ground for a proceeding under the statute to set aside any transfer of property made in fraud of the holder of the claim." The complainant asserts that this purpose is shown by the evidence.

It appears that while the negotiations for the loan were pending, the defendants Alfred Somers and William Somers were anxious that the proposed note of Alfred Somers should be so accredited that it could readily be discounted. They wanted the complainant, for a consideration, to lend his name as endorser, and, to induce him to do this, the complainant testifies, and William Somers supports him, that the defendant Alfred Somers stated to the complainant his ownership of the very lands which he afterwards conveyed to his son, as an inducement to the complainant to give him credit by endorsing his note. Alfred Somers made a *quasi*-denial of this testimony by attempting to show that he had no conversation with the complainant in June, when the note was first made; that it was in September that he first saw the complainant, and that he then had none of the real estate referred to in the conversation.

The denial of the defendant was not given in such a way as to be impressive of its truth. The conversation narrated would naturally, under the circumstances, have taken place at the inception of the credit. It is proven, by both the complainant and by William Somers, to have then taken place. The testimony of either is as disinterested and as credible as is that of the defendant Alfred Somers. It is established by the weight

of the evidence. The defendant Alfred Somers thus obtained from the complainant the loan of his name upon a representation that his ownership of the lands now in question entitled him to that credit. He thus knew that the complainant would look, and had a right to look, to those lands in case, because of the loan of his name, he should be obliged to pay the note.

The defendant, in the early part of July, 1896, became president of the "shoot-the-chutes" company, and entered upon the conduct of the business of the company, whose stock was purchased by the money borrowed on this note, and on another one which the defendant Alfred Somers had endorsed. His only child, Milton Le Roy Somers, a young man of twenty-two years of age, was that summer employed as a ticket taker of another amusement affair immediately in front of his father's "shoot-the-chutes" place. The son testifies that he could not remember the date when he first learned of the note made by his father to William Somers and endorsed by the complainant, but it was somewhere during the month of July, 1896. The proceeds of this note, and of another endorsed by him, enabled the father to secure the presidency of a company doing a business of the most public kind directly alongside and of the same general character as that in which the son was employed. The son then lived in his father's family, and it is extremely unlikely that he was unacquainted with this marked change in his father's employment, or that at his age, and with his financial relations to his father, he did not know of the note which the complainant had endorsed at the time it was due, or immediately that the moneys raised on it enabled the new scheme to be perfected. The son does not say he did not know, and all the circumstances indicate that he did know when he received his deed that his father had made the note in question which the complainant had endorsed.

This deed, the son says, conveyed all the lands his father owned. The father says he yet owns an equity of redemption (possibly worth $25) in another lot. Practically it was a conveyance of all the lands the father had. The consideration named in the deed is $2,000. No attempt was made to claim that this stated sum was in any way true. The son says that

Mason v. Somers.

the actual consideration paid was $45 cash, and the rest was the payment of a claim which he had against his father for work and labor done by him while in his minority, and a member of his father's family, to the amount of $900. Neither writing nor book entry was produced to show this indebtedness. The son said he had such a book, but none was put in evidence. No mention of such a consideration appears in the deed. No receipt or discharge of any such debt was shown to have been given by the son to the father. There was neither any statement of the accounts between them, nor any bargaining fixing the valuation of the land. In short, the satisfaction of the $900 debt of the father to the son remained after the deed, so far as any evidence in the cause showed, precisely as the debt itself had existed before the deed, a matter resting solely in the contemplation of the mind, and without physical evidence of any sort.

The defendant Alfred Somers swears that he paid sums aggregating $1,459.50 for the lots conveyed to his son and that they were subject to a mortgage for $400. The mortgagee testifies that the father continued to pay the interest on the mortgage since the conveyance by his check and to accept receipts given to him for the interest in his name. There was a sort of denial that it was the father's money which made these payments. It appeared that the defendants had these interest receipts in their possession. If they had been produced they would have shown how the parties dealt. They were not produced. The taxes were receipted for in the son's name. After the conveyance these receipts were produced.

The most extraordinary incident attending this remarkable sale, when but $45 of real consideration is claimed to have been paid, is exhibited in the testimony of the son and not denied by the father. The son testifies that at the time the deed was made he owed to his father money which he had borrowed from him on which to go to college, and from time to time since, amounting in all to about $1,700. When asked, "How do you account for it, if you owed your father about $1,700 at the time this deed was made and your father owed you $900 and he was in your debt, that he ought to give you a deed for this property?"

he answered, " That was understood between my father and I, that the college debt was to stand until I could pay it."

It thus appears that the son owed to the father nearly double the amount which the father is claimed to have owed the son and which made the consideration of the deed, so that if the amounts had been set off the son would yet owe the father about $800 and the father would have kept the lands conveyed by the deed, and they could have been applied in payment of his debts.

The business of " shoot-the-chutes " continued to run during the summer of 1896, but did not pay and was a failure. The defendant Alfred Somers, though admitting that he went into it with a purpose to shirk the losses and stand to take the profits, says he did not discover that it was going to fail until the latter part of the season, but his testimony is not very credible on the point. The business was begun early in July, when the summer attendance at Atlantic City is quite sufficient to indicate whether the popular patronage will support such a business. The defendant had plenty of opportunity to foresee the impending disaster, and his conveyance to his son of all the lands which he had that were of any value, for a nominal consideration, without any bargaining as to values, allowing his own large claim against the son to stand uncollected and unapplied, indicates that the father was forefending the wrath to come and seeking to retain the property in a control which would favor him, so that if the worst came to the worst it could not be applied to make good the assurances which he gave to the complainant when he induced him to endorse the note.

The only consideration for the deed which had any element of good faith in it was the $45. But this sum and the whole of the residue of the alleged consideration were far less than the debt which the son admits he owed his father. The natural and reasonable manner of dealing with the two acknowledged debts would have been to have offset the one against the other, leaving the son still indebted to the father in about $800. Instead of this the father's debt to the son was kept separate, so that its settlement might serve as the consideration in the deed, leaving wholly unpaid the very much larger debt of the son to the

father. No reason for such a transaction is suggested, and none appears, except that one which accords with the other incidents of proof, a purpose to prevent the complainant from having that benefit of the defendants' property which the latter held out to the complainant as an inducement to endorse the paper. The complainant has shown by the weight of the evidence that the deed to the defendant Milton Le Roy Somers was made and accepted in fraud of the creditors of Alfred Somers.

No injury will be done to the son by declaring the deed made to him to be void. He admits that he owed his father a sum largely in excess of the amount which his father owed him, which he says was the real consideration of the deed. Neither debt is evidenced in a way to be negotiable. The son may at any time set off the sum his father owes him against the much larger sum he owes his father, and thus allow the father's lands to be applied in payment of his debt.

I will advise a decree in accordance with the views above expressed.