(August 2, 1923.)

## C. R. SASSAMAN, FRANCIS THREEHOUSE, CHAS. DICKINSON and CHAS. BALDWIN, Respondents, v. MALDA R. ROOT and SAMUEL H. ROOT, Appellants.

[218 Pac. 374.]

CHATTEL MORTGAGE—GIVEN AS INDEMNITY—WHEN SURETY MAY FORE-
CLOSE WITHOUT PAYMENT OF PRINCIPAL DEBT—ATTORNEY'S FEES—
WHEN ALLOWED—RIGHT OF MARRIED WOMAN TO CARRY ON BUSI-
NESS IN ABSENCE OF HUSBAND.

1. After the maturity of the principal debt, a surety who has
taken the mortgage on personal property as indemnity against
loss may go into a court of equity to compel payment of the prin-
cipal debt, although he has not paid such debt or any part of
it, where the mortgaged property which has been mortgaged to in-
demnify him is being dissipated, sold or disposed of, and the prin-
cipal debtor is insolvent.

2. In an action to foreclose a chattel mortgage securing an in-
debtedness evidenced by a note which provides that the maker will
pay a reasonable sum in addition to the costs and disbursements
in case suit is instituted, and the mortgage contains a clause pro-
viding that in addition to costs, the court may allow counsel fees
in such sum as the court may adjudge reasonable, such provision
is sufficient to support an allowance for attorneys' fees in a decree
foreclosing such mortgage, since the giving of the note and mortgage
is a part of the same transaction.

3. Where a husband conveys to his wife all of his interest in
the community property and leaves home for several years, return-
ing occasionally, and remains with his family only for short in-
tervals, and during his absence makes occasional remittances from
his earnings while engaged in various pursuits in widely separated
localities, such remittances being insufficient to support his family,
and during such absence his wife, to support herself and children,
engages in extensive farming operations, obtains credit and exe-
cutes notes secured by mortgages on her personal property, such
obligations cannot be avoided because she is a married woman.

Publisher's Note.

1. Right of surety to maintain action in equity to compel payment
of debt by principal without prior payment on his part, see note in
Ann. Cas. 1912C, 369.

4. Where a husband absents himself from his family during a period of several years, being most of the time beyond the territorial limits of the state and a part of the time beyond the United States, but who is constantly informed of his wife's business transactions, neither he nor his wife will be permitted to deny the validity of her obligations as against herself and property upon his return, because of her being a married woman at the time she contracted the indebtedness.

5. Where a married woman establishes and carries on a business with her own funds and allowances received by her from her husband, who is almost continuously absent, and through such transactions acquires personal property, and mortgages the same, and by the acts and declarations of both herself and her husband such property is treated as her separate property, neither of them will thereafter be heard to say as against her creditors that it is community property, which she cannot convey without the permission of her husband.

APPEAL from the District Court of the Tenth Judicial District, for Nez Perce County. Hon. Wallace N. Scales, Judge.

Action to foreclose a chattel mortgage. From judgment for plaintiffs, defendants appeal. *Affirmed.*

Eugene O'Neill, for Appellants.

Property acquired by money borrowed during coverture is presumed to be community property. (*Northwestern & P. Hypotheek Bank v. Rauch,* 7 Ida. 152, 61 Pac. 516; *Chaney v. The Gauld Co.,* 28 Ida. 76, 152 Pac. 468; *Yesler v. Hochstettler,* 4 Wash. 349, 30 Pac. 398; *Katterhagen v. Meister,* 75 Wash. 112, 134 Pac. 673.)

Where property is claimed as separate property acquired during coverture the fact must be established by the party claiming it to be separate property by clear and convincing evidence.

In the absence of such proof the presumption as to the community character of the property is absolute and conclusive. (*In re Boody,* 113 Cal. 682, 45 Pac. 858; *Myer v. Kinzer,* 12 Cal. 247, 73 Am. Dec. 538; *Morgan v. Lones,* 78

Cal. 58, 20 Pac. 248; *Dimmick v. Dimmick,* 95 Cal. 323, 30 Pac. 547; *Humbird Lumber Co. v. Doran,* 24 Ida. 507, 135 Pac. 66.)

The purchase of property in the wife's name, or by a married woman, she being engaged in a business out of the ordinary course of women's business, is sufficient to put third persons on inquiry as to the nature of the married woman's title, and they must, if they would avoid peril, comply with the statutes. (*Ramsdells v. Fuller,* 28 Cal. 37, 87 Am. Dec. 103; *Jackson v. Torrence,* 83 Cal. 521, 23 Pac. 695; Ballinger on Community Property, sec. 40; *Pixley v. Huggins,* 15 Cal. 127.)

The husband has the absolute management and control of the community property from the time of acquisition until dissolution by death or by division, by decree in divorce, and the wife cannot by her contracts bind the community property. (*Hall v. Johns,* 17 Ida. 224, 105 Pac. 71; *Kohny v. Dunbar,* 21 Ida. 258, Ann. Cas. 1913D, 492, 121 Pac. 544; *Dernham & Kaufmann v. Rowley,* 4 Ida. 753, 44 Pac. 643; *Jaeckel v. Pease,* 6 Ida. 131, 53 Pac. 399; *Bank of Commerce v. Baldwin,* 12 Ida. 202, 85 Pac. 497; *Meier & Frank Co. v. Bruce,* 30 Ida. 732, 168 Pac. 5; *McFarland v. Johnson,* 22 Ida. 694, 127 Pac. 911.)

Constant residing together is not required to maintain the marital relation or to preserve marital rights. It is a question of intent and abandonment of the community interests and intentional estrangement. (*Estate of McVay,* 14 Ida. 56, 93 Pac. 28; *Eproson v. Wheat,* 53 Cal. 715; *Jacobson v. Bunker Hill & Sullivan Min. & Con. Co.,* 3 Ida. 126, 28 Pac. 396.)

Fred E. Butler and F. H. Rehberg, for Respondents.

After maturity of the debt the surety has the right before payment to go into a court of equity and compel payment of the debt by the principal, or to be secured against loss. (32 Cyc. 249; *Slaterly v. Gross,* 96 Or. 554, 187 Pac. 300, 190 Pac. 577; 21 R. C. L. 410.)

"At law the surety must pay the debt before he can have an action, but not so in equity." (*Davis v. First Nat. Bank of Albany*, 86 Or. 474, 161 Pac. 93, 168 Pac. 929.)

Where the husband has thrown upon his wife the burden of maintaining herself or family, she has power to dispose of community, real or personal property. (*Forbes v. More*, 32 Tex. 195; *Slater v. Neal*, 64 Tex. 222; *Gregory v. Paul*, 15 Mass. 52; *Cheek v. Bellows*, 17 Tex. 613, 67 Am. Dec. 686; *Fullerton v. Doyle*, 18 Tex. 13; *Heidenheimer v. Thomas*, 5 Tex. Law Review, 205; *Diefendorff v. Hopkins*, 95 Cal. 343, 28 Pac. 265.)

"An owner of property who stands by and sees a third person sell or mortgage it under claim of title and without asserting his own title or giving the mortgagee any notice thereof, is estopped as against said mortgagee from afterwards asserting his title." (21 C. J. 1154.)

"The law requires consistent conduct and where inconsistency would work injury to a third party the other is estopped." (21 C. J. 1204, 1205.)

WILLIAM A. LEE, J.—This is an action to foreclose a chattel mortgage executed by appellant Malda R. Root, which was given to respondents to secure a note for $3,000, bearing interest at ten per cent, payable one year from date thereof.

The amended complaint alleges that Malda R. Root executed to the State Bank of Kamiah on December 15, 1919, a note for $3,000, payable on demand, and that this note given to respondents was in consideration of their being sureties for the payment of the note given to the bank. Both notes and the mortgage are pleaded *haec verba* in the complaint. Respondents do not allege that they have paid the note upon which they became sureties, but allege that said Malda R. Root had been engaged in extensive farming operations in Lewis county, Idaho, and had embarked upon the venture with her own funds, money obtained from her own labor, income from her separate property and the money secured from the bank, all of which was used by her in the

conduct of such farming operations, to enable her to support herself and children, protect her separate property, and for her own use and benefit; that appellant Samuel H. Root, her husband, had lived separate and apart from her during most of the time from January, 1913, until 1920; that he had full knowledge that his wife was carrying on these farming operations in her own name and as her separate business, and that she was buying, selling, acquiring and otherwise disposing of property in the ordinary course of business, and that he consented thereto; that all of said property covered by the chattel mortgage was acquired by Malda R. Root during the time he was absent from the ranch and while she was carrying on her separate business. As one of the grounds for bringing this foreclosure action, it is alleged that she had permitted a large amount of the machinery included in the mortgage to be secreted and hidden, had sold a large part of the grain covered by the mortgage, and had otherwise violated its conditions, and that she was insolvent, and the foreclosure of this mortgage was necessary to prevent them from suffering irreparable injury. Appellant Samuel H. Root is made a party defendant because of his claiming some interest in the mortgaged property, no other relief being asked for against him.

The answer to the amended complaint denies the execution of the note to the bank or that respondents guaranteed its payment, or that appellant Malda R. Root executed the note or chattel mortgage to respondents, and denies specifically other material allegations.

During the trial of the cause the parties stipulated that the issues to be determined should be: (1) was the promissory note and chattel mortgage alleged to have been given to respondents executed and delivered by Malda R. Root? (2) Was the property described in the chattel mortgage subject to mortgage in the manner and form purported to be done by Mrs. Root, and if not, what part of said property was exempt? (3) If the court should determine that the property was subject to mortgage, then it shall determine whether she had authority to execute the same. (4) Has

the appellant Samuel H. Root any right in the property described in the chattel mortgage?

The cause was tried by the court, who made findings and conclusions in favor of respondents and against appellants, and a decree was entered thereon directing the property described in the mortgage to be sold and the proceeds deposited with the clerk, to save harmless respondents upon their guaranty agreement with the bank, and holding that the husband had no interest in the property, from which judgment this appeal is taken.

Appellants assign some twenty errors upon which they rely for a reversal. The first and second relate to alleged errors of the court in permitting the respondents to amend their complaint. There is no merit in this assignment, for the reason that the amendment allowed was clearly within the discretion of the court. The third assignment, that the complaint does not state facts sufficient to constitute a cause of action, appears to be predicated upon the complaint not having alleged that respondents had ever paid anything upon the note to the State Bank of Kamiah under their guaranty, and therefore they were not in a position to recover on the secured note given to them as indemnity for such guaranty.

Assignments from four to twenty relate to the insufficiency of the evidence to support the findings, conclusions or judgment, in the particulars specified. Appellants contend that it being known and conceded that Malda R. Root was a married woman during all of the time she was engaged in carrying on these business transactions, not separated from her husband, but living together as husband and wife and forming a marital community, the wife was wholly disqualified to enter into contracts upon her own initiative, and her obligations are upon motion of either herself or her husband voidable and cannot be enforced. Mrs. Root also denies that she executed either of the notes or the mortgage mentioned in the complaint.

The trial court found that Malda R. Root for a valuable consideration executed a $3,000 note on December 15, 1919,

37 Idaho.—38

as alleged in the complaint; that it was to be held by said bank as security for an indebtedness then due from her to the State Bank of Kamiah and thereafter to be advanced at her request; that the respondents in writing guaranteed payment of this amount to the Kamiah State Bank, and in consideration of such guaranty, and to indemnify said guarantors against loss, Mrs. Root on the 18th of December following executed the note and chattel mortgage set forth in the complaint; and that pursuant to said agreement the bank advanced Mrs. Root approximately $3,600. These findings are sustained by the evidence.

It was further found that in January, 1913, Samuel H. Root conveyed to his wife all of his interest in all of the real and personal property at that time belonging to the community, and thereupon went alone to Canada; that he did not return until that fall, and in the spring of 1914 again left his wife and children and engaged in various forms of employment in Washington, California and Central America, as well as other places; that in 1915 Mrs. Root, out of the proceeds of her separate property, purchased certain farming machinery, equipment, livestock and growing grain, and entered into extensive farming operations upon leased Indian lands near Kamiah, commonly known as the "Looking Glass Ranch"; that she carried on in her own name these farming operations, borrowed money, mortgaged personal property, traded, purchased and sold personal property, and generally conducted the affairs of this ranch in her own name and without the aid or assistance of her husband, who had full knowledge of the business she was doing and acquiesced therein; that he did not return to his home or reside with his wife and family except for short intervals until the latter part of 1919, and after doing so, permitted his wife to carry on the business as she had theretofore done, in her own name, and refused to enter into any of her financial affairs connected with the business, which findings are also supported by the evidence.

The court further found that all of the personal property described in the chattel mortgage and referred to in the

complaint is the separate property of Mrs. Root, that she
had full authority under the law to execute the notes and
mortgage referred to, and that her husband had no right,
title, claim or interest in or to the same, it being the sep-
arate property of Malda R. Root, and subject to such chattel
mortgage. The court finds that $400 is a reasonable attor-
ney's fee for the bringing of the action; that appellants have
not paid anything on the guaranty contract to the bank,
and had sold a large part of the property described in the
chattel mortgage, and had attempted to sell other property
therein described, and that the property so mortgaged would
be destroyed or lost to respondents, and they would suffer
irreparable injury, unless they were permitted to foreclose
the same, and finally, that Malda R. Root was insolvent.
We think these findings and conclusions are sustained by
the record.

Considering the third assignment, that the complaint fails
to state a cause of action because it fails to allege that re-
spondents had paid the note of Mrs. Root given to the State
Bank of Kamiah, for which respondents took the note and
mortgage sued on in this action as indemnity: Ordinarily a
surety must suffer loss before he can recover on an indem-
nity. (32 Cyc. 247; 21 R. C. L. 1100, sec. 136; *Central
Banking etc. Co. v. United States Fidelity etc. Co.,* 73 W. Va.
197, 80 S. E. 121, 51 L. R. A., N. S., 797; notes, Ann. Cas.
1912B, 625; 7 L. R. A. 84.) However, as a rule a surety
is authorized to realize on any securities pledged whenever
he is in danger of being forced to pay the debt, and before
payment. (Notes to 1 Am. Dec. 48; 13 L. R. A. 340.) A
surety, after the debt for which he has become liable has be-
come due, may without paying or being called on to pay it,
file a bill in equity in the nature of a bill *quia timet,* to
compel the principal debtor to exonerate him from liability
by its payment, provided no rights of the creditor are preju-
diced thereby. (21 R. C. L. 1110, sec. 146; *Union Trust Co.
v. Morrison,* 125 U. S. 591, 8 Sup. Ct. 1004, 31 L. ed. 825;
*Tillis v. Folmar,* 145 Ala. 176, 117 Am. St. 31, 8 Ann. Cas.
78, 39 So. 913.) After maturity of the debt, although the

surety has not been troubled by the creditor, he has the right before demand to go into a court of equity to compel payment of the debt by the principal, or from the estate of the principal, or to be secured against loss. (32 Cyc. 248.)

In the instant case, the order of sale required the proceeds of the sale to be deposited with the clerk of the court, to be applied upon the principal indebtedness owing by Mrs. Root to the bank, after the same should be established by a judgment of the court, only after a showing was made that the mortgaged property was being dissipated, sold or disposed of, and that the principal, Mrs. Root, was probably insolvent. We think this is a sufficient showing to enable respondents to maintain this action without an allegation that they had paid the principal debt, which was a demand obligation.

It is also contended that the indemnity note involved in this action does not provide for the recovery of an attorney's fee. That part of the note reads:

"And in case suit or action is instituted to collect this note, or any portion thereof, the maker or makers hereof promise and agree to pay, in addition to the costs and disbursements provided by statute, a reasonable sum in case of said suit or action."

If this provision of the note stood alone, it might be insufficient to support a judgment for an attorney's fee, but the mortgage expressly provides that in case of foreclosure, the court may award an attorney's fee.

We conclude that the complaint states a cause of action sufficient to support the judgment of foreclosure, including an attorney's fee for services rendered in connection therewith.

Appellants' assignments from four to twenty, inclusive, are based upon the proposition that they were husband and wife, and as such constituted a marital community during all of this time, and that therefore the wife was under such disability that the contracts which she made are unenforceable against her or the property which she attempted to mortgage. As appears from the findings, and in that respect they are not controverted, the husband, Samuel H.

Root, during all of this time was seriously afflicted with what is termed "wanderlust." After he conveyed the homestead to his wife in 1913, in consideration of love and affection, "to be her sole and separate property," which consisted of approximately 160 acres, he seems to have left his wife and children to shift for themselves as best they could, and between that time and the fall of 1919 he traveled throughout the entire northwest, including Canada, going as far south as Central America, being engaged in many occupations during this time. He occasionally returned to this locality, usually remaining a very short time. He occasionally sent small sums of money, but the aggregate was wholly insufficient to support his children, and these remittances never came regularly. At no time while his wife was engaged in carrying on the farming operations out of which this particular indebtedness arose did he ever visit her at this ranch until late in the fall of 1919. He never attempted to exercise any control over any of the business affairs his wife was carrying on until 1920, and then disclaimed any liability on account of them. He had an intimate knowledge of her business transactions, which he knew necessarily required her to seek and obtain extensive credit, such as the operation of a wheat farm of five hundred acres would ordinarily require of a person of limited means, but he at no time objected to his wife's engaging in this business, or sought to prevent her from doing so, or advised those with whom she was dealing that she was under the disability of a married woman by reason of her being a member of a marital community of which he was the authorized agent.

In 1915, when she began her operations on the leased Indian lands, Root was in Central America, and she began this enterprise in conjunction with one E. W. Glidden. The cashier of the State Bank of Kamiah testified, and his testimony was not seriously controverted, that he had seen Mrs. Root sign the note and chattel mortgage referred to in the complaint; that she was farming Indian land near Kamiah, known as the Looking Glass place; that she had executed her bond to the Indian agency in order to secure the rent, and

before the bank would advance her the money to carry on the farming operations, it was necessary for her to obtain security; and that respondents were her bondsmen upon the Indian lease, and guaranteed the payment of advances to be made up to $3,600.

It further appears from the record that when Mrs. Root's husband returned from Nicaragua in 1916 he would not have anything to do with her farming operations; that prior to going on these Indian lands she was in the bakery business, and from there embarked in farming with an outfit costing $5,000, which included farming implements and livestock necessary to operate the same. Even after Root came back in 1920, he would not have anything to do with the farming operations, Mrs. Root having her own bank account and credit account for merchandise, including seed wheat and provisions. She hired and discharged the men and paid their wages, stating that it made no difference about him being there, she transacted the business just the same. Her husband, after his return, never drew checks upon her account. Both Mr. and Mrs. Root testify that the farming operations were bankrupt, and that they had not received enough money to pay the costs of operation for the year of 1920.

Where a husband is free from debt and makes a gift to his wife from the community property, the same will thereafter become her separate property, and will not be liable to the subsequent claims or debts of her husband. (*Bank of Orofino v. Wellman,* 26 Ida. 425, 143 Pac. 1169; *Peck v. Brummagim,* 31 Cal. 440, 89 Am. Dec. 195.)

In the instant case, appellant Samuel H. Root, before embarking upon the extensive pilgrimage that occupied most of his time for the following seven years, in the year of 1913, in consideration of love and affection, deeded to his wife his interest in their homestead, to be her sole and separate property. With the aid of this, she first embarked in a bakery business, and in 1915 began these extensive farming operations. The personal property in the way of farm implements, seed wheat and general supplies, without which

she would not have been able to operate this leased farm, were obtained with her personal property and with money she earned by her own services, together with that which she was able to borrow, and to secure borrowed money, upon numerous occasions she gave notes secured by chattel mortgages upon these chattels and the growing crops. While the husband at intervals returned to this locality, he never went to this ranch until long after the money for which these obligations were given had been obtained and expended. So far as the record discloses, it does not appear that appellants have ever entirely ceased to cohabit as husband and wife, but during all of this time prior to the execution of the note and mortgage in question, Mrs. Root carried on her business operations without any interference or aid from her husband, other than his occasionally making a small remittance.

Where a married woman establishes and carries on a business with her own funds, or with funds secured upon the faith and credit of such business transactions, although she may mingle with her own funds allowances received from her husband, who is almost continuously absent, and where she acquires by reason of such business transactions personal property, and mortgages the same to secure funds with which to carry on such business, and by the acts and declarations of both herself and her husband it is shown that they consider the business and property acquired in the course of carrying on such business as hers alone, neither she nor her husband will thereafter be heard to say as against her creditors that the property so acquired was community property, which she had no right to mortgage or convey without permission of her husband. (*Diefendorff v. Hopkins*, 95 Cal. 343, 28 Pac. 265, affirmed upon rehearing, 95 Cal. 343, 30 Pac. 549.)

C. S., sec. 4656, makes all property of the wife owned by her before marriage, and that acquired by gift, bequest, devise or descent, or that which she shall acquire with the proceeds of her separate property, her sole and separate property. C. S., sec. 4666, provides that the husband shall

not control the earnings of the wife for her personal services, or the rents and profits of her separate estate. (*Thorn v. Anderson*, 7 Ida. 421, 63 Pac. 592; *Evans v. Kroutinger*, 9 Ida. 153, 2 Ann. Cas. 691, 72 Pac. 882; *Re Estate of Pepper*, 158 Cal. 619, 112 Pac. 62, 31 L. R. A., N. S., 1092 and note; *Lenninger v. Lenninger*, 167 Cal. 297, 139 Pac. 679.)

It has been held by the courts of other states having a similar community property law that where the husband is absent, leaving no one else authorized to take care of the common property, the wife has implied authority to do so. (*Cheek v. Bellows*, 17 Tex. 613, 67 Am. Dec. 686.)

We think the judgment in this case should be affirmed, upon the ground that the property mortgaged was not community property, under the facts and circumstances disclosed by this record, and further, that where a husband to all practical intents and purposes abandons his wife and children, as in this case, leaving them without adequate means of support, and the wife thereupon assumes the responsibility of supporting herself and their children, and in order to do so embarks upon extensive business ventures, requiring a large amount of funds, which she obtains from the proceeds of her separate property and from her personal earnings and the earnings of the business, as well as by borrowing money with which to carry on such business, all of which is done with the knowledge of the husband, neither of the parties should thereafter be permitted to repudiate the obligations she has entered into with strangers for the purpose of carrying on such business, nor should either member of said marital community be permitted to contend that the property she acquired in this manner during said time is community property, as against the claims of those who have had dealings with her upon the faith and credit of her having been engaged in carrying on her sole and separate business, where it is clear that the obligations she incurred were contracted for her separate use and benefit.

The judgment should be affirmed, and it is so ordered, with costs to respondents, except as to costs for their brief,

which are disallowed under Rule 43 of this court because of miscitation of authorities, particularly at page 21 thereof, where three errors of this kind occur.

McCarthy, Dunn and William E. Lee, JJ., concur.

Petition for rehearing denied.