(No. 5394. September 26, 1930.)

ROY SAUNDERS, Respondent, v. MABEL SAUNDERS, Executrix of the Estate of GUY SAUNDERS; MABEL SAUNDERS, Appellants.

[291 Pac. 1069.]

Walters, Parry & Thoman and J. R. Keenan, for Appellants.

Porter & Taylor, for Respondent.

GIVENS, C. J.—Plaintiff-respondent, Roy Saunders, brought this action against Mabel Saunders, individually and as executrix of the estate of Guy Saunders, deceased, to set aside as fraudulent certain transfers of real and personal property from Guy Saunders to Mabel Saunders; to have said transfers declared secondary and subsequent to a claim against the estate of Guy Saunders for $2,800, interest, etc., the amount of a certain note previously given by Guy Saunders to Roy Saunders and indorsed by him to one Ada Lenz, and to have Mabel Saunders account to the estate of Guy Saunders for the said real and personal property.

On January 27, 1925, Guy Saunders executed the promissory note to plaintiff. Before maturity of the note plaintiff indorsed it to one Ada Lenz, guaranteeing its payment. On June 3, 1924, and May 18, 1925, Guy Saunders deeded

to his wife certain described real estate. Between the date of the last real estate transfer and the date of his death, May 20, 1926, he transferred all his personal property to his wife. These transactions were alleged to have been made with intent to defraud plaintiff. It was also alleged that the note was past due, and that Ada Lenz was demanding payment from plaintiff and unless it was paid from the estate, plaintiff would have to pay it. The note was unsecured.

For purposes of trial only, the case of *Ada Lenz v. Mabel Saunders,* was consolidated with the present action. In the former case Mrs. Lenz sought to recover judgment against Roy Saunders, plaintiff herein, on the said note, and to set aside the conveyances of real property made by Guy Saunders to Mabel Saunders. Ada Lenz had presented a claim to defendant as executrix for the indebtedness evidenced by the note which the executrix and the probate court approved and allowed. Respondent filed no claim against the estate and at the time of this action no judgment had been recovered against him as indorser on the note nor had he brought any action to compel the estate of Guy Saunders to pay the note, nor has he paid the note.

The trial court found that neither of the transfers of real property was made with fraudulent intent, the community personal property at the time of the last deed exceeding the indebtedness of the community. The evidence shows that in June, 1924, the personal property of the community consisted of about 1,500 head of sheep, worth about $17 a head; forty shares of stock of the Jerome National Bank, and six shares of stock of the Hazleton State Bank, the value of which was not given; a one-third interest in the Saunders Bros. partnership valued at $4,562, and farm implements and livestock of indefinite value. The court found that the debts of the community, including that evidenced by the note in question, amounted to $18,950; that defendant appropriated all the above-described personal property to her own use, and claimed it as her own separate property; that she gave no value for any of the

property transferred to her and the estate of Guy Saunders was left insolvent because of the transfers of personal property. The date of the transfer, or transfers of the personal property is not shown by the record. At the time of the trial defendant had paid all the estate indebtedness except the $2,800 in question.

From these findings the court concluded that the creditors of the estate of Guy Saunders were entitled to have subjected to the payment of their claims the shares of bank stock; that defendant was personally liable to creditors of the estate, in addition to the bank stock, in an amount sufficient to pay their claims, not exceeding a total of $13,912; that she was liable to the estate for the shares of bank stock, and the value of other personal property appropriated by her of the net value of $13,912; and that she should report, inventory and account therefor to the probate court.

The defendant has appealed from a judgment entered in accordance therewith, except the decree did not hold the appellant personally liable for any of the debts due from the estate.

Respondent contends and cites authority to the effect that a surety before paying the obligation upon which he is bound may bring a bill in equity *quia timet* to compel his principal to pay the debt (21 C. J. 130) and argues from this contention that he may likewise bring an action to set aside alleged fraudulent conveyances where it is shown that the debtor or his estate is without funds to satisfy the obligation. The authorities cited by respondent and others support the proposition, which appears to be the general rule, that a surety may bring an action in equity *quia timet* to compel the principal to discharge the obligation. (*Pavarini & Wyne v. Title etc. Co.*, 36 App. D. C. 648, Ann. Cas. 1912C, 367, and note; *Carr v. Davis*, 64 W. Va. 522, 16 Ann. Cas. 1031, 63 S. E. 326; 20 L. R. A. N. S., 58; *Saylors v. Saylors*, 3 Heisk. (Tenn.) 525; 4 Pomeroy's Equity Jurisprudence, 4th ed., sec. 1416 et seq.; 1 Story's Equity Jurisprudence, 14th ed., sec. 571.) If secu-

rity has been given the creditor in connection with the transaction or if security has been given the surety to hold him harmless on his contract of suretyship, the surety may proceed against the property. (*Sassaman v. Root*, 37 Ida. 588, 218 Pac. 374; *Maxwell v. Miller*, 38 W. Va. 261, 18 S. E. 449.) No case cited by respondent, however, and we have found none from independent investigation. holds that one in the position of respondent herein, in the absence of a statute authorizing such action, and we have none, may bring an action to set aside a fraudulent conveyance, and there is direct authority to the contrary. (27 C. J. 479; 50 C. J. 231.)

Briefly reviewing the cases cited by respondent: In *McConnell v. Scott*, 15 Ohio, 401, 45 Am. Dec. 583, there was a judgment against both the surety and the principal. In *Polk v. Gallant*, 22 N. C. 395, 34 Am. Dec. 410, there was a lien upon specific land. In *Allen v. Cooley*, 53 S. C. 414, 31 S. E. 634, a mortgage had been given the surety to indemnify him against loss. The case of *Thigpen v. Price*, 62 N. C. 146, holds that if there is specific property subject to a lien the property may be proceeded against, and such is likewise the holding of the case cited in support thereof, *Miller v. Miller*, 62 N. C. 85. *Henderson etc. Co. v. John Shellito Co.*, 64 Ohio St. 236, 83 Am. St. 745, 60 N. E. 295, holds that securities deposited to indemnify the surety may be realized upon. The language in *Strong v. Taylor School Township*, 79 Ind. 208, supporting respondent's position is *dictum*. In *Peter v. Kahn*, 93 Ala. 201, 9 So. 729, the surety had satisfied a judgment. In *Thomas v. St. Paul's M. E. Church*, 86 Ala. 138, 5 So. 508, there was specific property involved. *West v. Chasten*, 12 Fla. 315, merely holds that a suit may be brought to compel the debtor to pay. In *Sanford v. United States Fidelity Co.*, 116 Ga. 689, 43 S. E. 61, the complaint as amended showed that the surety had paid the judgment against his principal.

Wisconsin has held squarely and adversely on the proposition advanced by respondent (*Ellis v. Southwestern Land Co.*, 108 Wis. 313, 81 Am. St. 909, 84 N. W. 417), and dis-

tinguishes the Tennessee case (*Greene v. Starnes*, 1 Tenn. 582) by reason of the statutes of Tennessee which we do not have. Likewise, in *Walters v. Akers*, 31 Ky. Law Rep. 259, 101 S. W. 1179, the holding is based on a statute which we do not have. (See, also, *Mason v. Somers*, 59 N. J. Eq. 451, 45 Atl. 602; *Severs v. Dodson*, 53 N. J. Eq. 633, 51 Am. St. 641, 34 Atl. 7; 27 Am. & Eng. Ency. of Law, 2d ed., 477.)

*Smith v. Young*, 173 Ala. 190, 55 So. 425, clearly defines the position of the surety thus: "A surety is a creditor from the inception of his contingent liability," and *after he has paid* the surety debt he may maintain a creditor's bill against the principal and other creditors to set aside fraudulent conveyances made while the liability of the surety was contingent or to have them declared general assignments, but he may not maintain such a bill against his principal on such a liability prior to the payment of part or all of the debt, and his right of action does not accrue (that is, to set aside fraudulent conveyances) until such payment.

Respondent cites 24 C. J. 342, note 76 and *Meriden Steam Mill Lumber Co. v. Guy*, 40 Conn. 163, cited therein, in support of the fact that respondent may take advantage of the claim filed by Mrs. Lenz. That case, however, holds that the cause of action such as respondent brought here does not accrue until the debt is paid.

The general rule in this state has been announced in *Perkins v. Bundy*, 42 Ida. 560, 247 Pac. 751, to the effect that until "a creditor has reduced his claim to judgment, at least in the absence of a lien upon the property alleged to have been fraudulently conveyed, he cannot maintain an action to set aside his debtor's conveyance as fraudulent."

If we consider respondent as a creditor of the estate of the deceased by reason of his indorsement of the note, he has presented no authority which makes an exception to this general rule in his favor permitting him to bring the action here instituted which is not in *quia timet* to compel or enforce payment from the debtor or his estate, but an action to set aside a fraudulent conveyance. Therefore, the

authorities cited by respondent do not reach the point herein involved. It is therefore unnecessary to discuss or consider whether respondent may take advantage of the claim filed by Mrs. Lenz inasmuch as he has not brought himself in privity therewith.

The judgment is reversed and the cause remanded, with instructions to enter judgment in favor of appellants. Costs awarded to appellants.

Budge, Lee, Varian and McNaughton, JJ., concur.